**Stephanie BRECKENRIDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–99–00858–CR.**

Court of Appeals of Texas, San Antonio.

Oct. 25, 2000.

Rehearing Overruled Dec. 28, 2000.

Discretionary Review Refused June 6, 2001.

---

Mark Stevens, San Antonio, for Appellant.

Fred Hernandez, Assistant District, Attorney, Del Rio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, SARAH B. DUNCAN, Justice.

## OPINION

TOM RICKHOFF, Justice.

Stephanie Breckenridge appeals a judgment sentencing her to three years imprisonment based on a jury's verdict finding her guilty of four counts of indecency with a child by exposure.[1] Breckenridge asserts sixteen points of error, complaining: (1) the trial court erred in defining "genitalia" in the jury charge; (2) a fatal variance existed between the indictment and

---

1. Although the trial judge sentenced her to three years, during the sentencing hearing, the trial judge emphasized that he would grant Breckenridge a hearing on a motion for shock probation.

the jury charge; (3) the trial court erred in its limiting instruction relating to extraneous misconduct; and (4) the evidence is legally and factually insufficient to support the jury's verdict.

## FACTUAL BACKGROUND

Breckenridge was charged with five counts of indecency with a child by exposure. Two of the counts relate to conduct alleged to have occurred on May 28, 1998, involving two victims, N.L. and M.T.[2] The remaining three counts relate to conduct alleged to have occurred on June 3, 1998, involving three victims, M.T., E.A., and A.L. The jury found Breckenridge guilty of both counts alleged to have occurred on May 28, 1998, and two of the counts alleged to have occurred on June 3, 1998. The jury found Breckenridge not guilty of the count alleged to have occurred on June 3, 1998, in which M.T. was the alleged victim.

N.L. and M.T. both testified regarding the events that occurred on May 28, 1998. Both boys knew Breckenridge from church because she was their Sunday school teacher, and both boys were friends with Breckenridge's stepson, T.B. On May 28, 1998, N.L. went over to T.B.'s house, and M.T. arrived later. Either Breckenridge or Breckenridge and T.B. brought up the idea of going skinny-dipping, and everyone agreed to the suggestion. N.L. stated that he saw Breckenridge completely nude, including her, "breasts, stomach, back, butt, legs, feet and pubic hair," but he "didn't see her vagina." M.T. stated that he saw Breckenridge's breasts and pubic area. Both boys stated Breckenridge never attempted to hide her nudity. Breckenridge told them that she was afraid of her hus-

band finding out because they would all be in trouble. Breckenridge's husband called while they were in the pool, and Breckenridge got out of the pool. Breckenridge told the boys to hide behind the house, which they did until Breckenridge's husband left. After Breckenridge's husband left, Breckenridge rented two movies containing sexual content, which the three boys watched with Breckenridge while drinking wine coolers supplied by Breckenridge. T.B. and M.T. fell asleep on the floor, and N.L. testified that he rode his motorcycle home. During cross-examination, defense counsel questioned the boys about details provided during their testimony that were not contained in their statements to police and minor inconsistencies between their testimony and their statements.

T.B. also testified about the events of May 28, 1998. T.B. stated that no one suggested skinny-dipping, but after the boys and Breckenridge got into the pool, someone dared everyone to take their suits off. T.B. did not remember his father calling, and T.B. stated that after they left the pool, they went inside to watch television but no one was drinking.

N.L., M.T., E.A., A.L., and J.R. all testified regarding the events that occurred on June 3, 1998. Each of these boys knew Breckenridge because she was their Sunday school teacher and because they were friends with her stepson T.B. After getting physicals for camp at the church, everyone went to Breckenridge's house for a party. Orders were taken for alcoholic beverages, and Breckenridge went to purchase the drinks. After awhile, everyone started dancing. T.B. then told Breckenridge to do her "stool" dance. Breckenridge put a

---

**2.** The victims and most witnesses in this case are minor children, and they are identified by their initials throughout this opinion. At the time of the offenses charged in this case, M.T., A.L., and T.B. were fourteen years old, N.L. and J.R. were fifteen yeas old, and E.A. was sixteen years old.

stool in the middle of room, and began dancing provocatively while removing her clothes. T.B. then brought ropes to tie up Breckenridge. At that time, she had removed her top, but not her pants. After tying her up, the boys removed Breckenridge's pants, but not her underwear. The boys let Breckenridge up when she got angry at T.B. for taking pictures. Later, A.L., M.T. and E.A. were "making out" with Breckenridge on the trampoline in the back yard. Breckenridge was groaning and making noises like she was enjoying what was happening. M.T. went inside, but E.A. and A.L. remained outside with Breckenridge on the trampoline. At some point, Breckenridge's underwear went down to her ankles, and E.A. observed A.L. "kissing her crotch area." E.A. stated that he just saw pubic hair, but he "didn't see her vagina." A.L. stated that the last thing he remembered was Breckenridge's pants going down, but he did not remember anything else because he was too intoxicated. A.L. stated that he did not see Breckenridge's genitals. During cross-examination, defense counsel questioned the boys about details provided during their testimony that were not contained in their statements to police and minor inconsistencies between their testimony and their statements.

T.B. also testified about the events of June 3, 1998. He stated that J.R., A.L., N.L., M.T., and E.A. were at his house for a party after the physicals. Breckenridge purchased alcohol for the boys. T.B. testified that he stayed in his room for a long period of time. T.B. stated that he took a picture of Breckenridge when the other boys had pinned her down. T.B. testified that at one point he saw Breckenridge dancing on a stool, but he did not tell her to do that. T.B. stated that Breckenridge never took her clothes off. T.B. testified that he went outside for a short while, then came inside and went to sleep. T.B. stat-

ed that Breckenridge remained outside, and he did not know what she did after he came back inside.

## JURY CHARGE

In her first five points of error, Breckenridge complains that the trial court erroneously submitted the following definition of genitals or genitalia in the jury charge:

The genitals or genitalia of a female consist of an internal group and an external group. The internal group is situated within the pelvis, and consists of the ovaries, uterine tubes, uterus, and vagina. The external group is situated below and in front of the pubic arch, and consists of the mons pubis (the rounded mound in front of the joinder of the public bones that becomes covered with hair at the time of puberty), the labia majora and minora (longitudinal folds of skin at the opening of the female orifice) and certain glands situated within the vestibule of the vagina.

Breckenridge contends that the trial court should not have included the definition in the jury charge because: (1) the definition singled out testimony and commented on the weight of the evidence; (2) the definition did not distinctly apply the law to the facts of the case; (3) the definition amounted to a constructive amendment of the indictment in violation of the United States and Texas Constitutions; and (4) the definition was without support in the law or evidence. The State responds that the definition was proper and its submission was not an abuse of the trial court's discretion.

A trial court has broad discretion in submitting proper definitions to the jury. *See Roise v. State*, 7 S.W.3d 225, 242 (Tex.App.—Austin 1999, pet. ref'd); *Macias v. State*, 959 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1997, pet.

ref'd), *cert. denied*, (U.S. Oct. 2, 2000)(No. 00–5278). A trial court abuses its discretion if it acts without reference to guiding principles or rules. *See Lyles v. State*, 850 S.W.2d 497, 502 (Tex.Crim.App.1993); *State v. Cabello*, 981 S.W.2d 444, 445 (Tex. App.—San Antonio 1998, no pet.).

 A trial court must define any legal phrase that a jury must necessarily use in properly resolving the issues. *See Macias*, 959 S.W.2d at 336. Generally, terms not legislatively defined are to be understood as ordinary usage allows, and jurors may give them any meaning which is acceptable in common parlance. *Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim.App.2000). There are exceptions, however, to this general rule. *Id.* at 772. Justice is better served, and more consistently applied, if jurors are provided a precise, uniform definition to guide their determination regarding the meaning of certain words and phrases. *Id.* For example, justice is better served by defining words and phrases which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words have a well-known common law meaning. *Id.*

 The terms genitals and genitalia have acquired an established legal or common law meaning. *See, e.g., Clark v. State*, 558 S.W.2d 887, 889 (Tex.Crim.App. 1977); *Carmell v. State*, 963 S.W.2d 833, 837 (Tex.App.—Fort Worth 1998, pet. ref'd), *rev'd on other grounds*, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) (reversed on ex post facto grounds because victim's testimony was not corroborated); *Aylor v. State*, 727 S.W.2d 727, 729 (Tex. App.—Austin 1987, pet. ref'd); *Lujan v. State*, 626 S.W.2d 854, 858–59 (Tex.App.— San Antonio 1981, pet. ref'd).

In *Clark*, the appellant argued that the definition of "sexual contact" included only the anus and genitals, and did not include the urinary opening. *Clark*, 558 S.W.2d at 889. In addition, the appellant argued that a female's "genitals" included only the vagina and no other part of the genital area. *Id.* Therefore, the appellant contended that the testimony that he touched the victim's "front butt," which was defined as that "area between your legs where you pea [sic] at," was insufficient to sustain his conviction. *Id.* The Texas Court of Criminal Appeals rejected the argument, asserting the statute prohibited the touching of any part of the genitals, which includes more than just the vagina. *Id.* The Court stated, "the definition of 'genitals' includes the vulva which immediately surrounds the vagina." *Id.*

In *Carmell*, the appellant asserted that the evidence was legally insufficient to support his sexual assault conviction because the victim's testimony that the defendant touched her "genital area" with his penis was not specific enough to prove that his penis contacted the victim's sexual organ. *See Carmell*, 963 S.W.2d at 836–37. The appellant conceded that if the victim had testified that his penis touched her "genitals" or "genitalia," the evidence would be sufficient. *See id.* The court rejected the appellant's argument, stating genitals include "the vulva which immediately surrounds the vagina." *Id.* (quoting *Clark*, 558 S.W.2d at 889). The court reasoned, "If K.M. had testified, as appellant desired, that appellant contacted her 'genitals,' that would have encompassed the 'genital area,' i.e., the area surrounding the genitals. Further, it would be untenable to find that the genital area does not include the genitals." *Id.*

In *Lujan*, the appellant argued that the testimony of the victim was insufficient to sustain the allegation that he engaged in sexual contact by touching the victim's vagina. *See Lujan*, 626 S.W.2d at 858. This

court noted that the Texas Court of Criminal Appeals' holding that the definition of "genitals" includes the vulva which immediately surrounds the vagina. *See id.* at 859. This court then noted that "vulva" is defined as "the external parts of the female genital organs, including the labia majora, the labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance of the vagina." *Id.* (citing the Simplified Medical Dictionary for Lawyers (B. Maloy 2d ed.1951) 571 and Gray's Anatomy (C.M. Goss 25th ed.1951) 1317). This court further noted that "vagina" has been defined as "the genital canal in the female, extending from the uterus to the vulva." *Id.* (citing Stedman's Medical Dictionary (3d unabridged Lawyer's Ed.1972) 1367). Although we held that the term vagina was a more particularized term than the term "genitals," we found the evidence sufficient to sustain the conviction. *See id.*

Similarly, in *Aylor*, the court noted that "genitals" includes more than the "vagina," it includes "the vulva or tissue" immediately surrounding the vagina. *See Aylor*, 727 S.W.2d at 729. In *Bryant v. State*, 685 S.W.2d 472, 474 (Tex.App.—Fort Worth 1985, pet. ref'd), the court noted that "vagina" has been defined as "the canal in the female extending from the uterus to the external parts of the female genital organs." (citing BLAKISTON'S GOULD MEDICAL DICTIONARY 1439 (4th ed.1979)).

In this case, justice was better served by including the established legal and well-known common law meaning of the term "genitals" or "genitalia." *See Medford*, 13 S.W.3d at 772. The testimony of the boys drew a distinction between vagina and pubic hair or pubic area that could have confused the jurors, and the jurors were required to understand the legal meaning of the term genitals to properly resolve the issue. Therefore, the trial court did not abuse its discretion in including the definition in the jury charge.

◼ Even assuming the definition was improper, to warrant reversal, the appellant must show at least "some harm" from the error. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The burden of proof is on the defendant alleging charge error to show actual harm, not mere theoretical or potential harm. *See Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994). In determining the existence of some harm under *Almanza,* we examine any relevant information on the record, including the nature of the error, the entire charge, the state of the evidence, and the arguments of counsel. *See Johnson v. State,* 981 S.W.2d 759, 762 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd).

◼ Appellant complains the trial court's definition equates pubic hair with genitalia and authorizes the jury to convict based on exposure of pubic hair. The trial court's definition did not state pubic hair was genitalia, only that pubic hair covered parts of the external genitalia. In closing argument, appellant presented this theory to the jury by arguing the witnesses in the case saw only pubic hair. The jury rejected this argument, presumably inferring the defendant exposed her genitals based on the testimony that the defendant removed all of her clothes and the testimony stating the witnesses saw pubic hair. Whether or not the witnesses could actually see the genitals due to the defendant's pubic hair or due to a failure to inspect closely enough is not relevant to proving exposure. Conviction for exposure does not require the victim or witness to actually see the genitals, *See Uribe v. State,* 7 S.W.3d 294, 297 (Tex.App.—Austin 1999, pet. ref'd); the crime is exposing, unmasking, or uncovering the genitals. *See Balfour v. State,* 993 S.W.2d 765, 769 (Tex.

App.—Austin 1999, pet. filed). The charges in this case concern not what the victims saw, but what the defendant exposed. The defendant was able to argue the theory that only pubic hair was exposed, and the jury rejected the theory. Because there is no abuse of discretion in the jury charge, and in any event, no showing of harm, we overrule Breckenridge's first five points of error.

## VARIANCE BETWEEN INDICTMENT AND CHARGE

 In her sixth point of error, Breckenridge contends that there was a fatal variance between the indictment, which alleged that Breckenridge exposed her "genitals," and the court's charge, which authorized her conviction if the jury found that she exposed "any part of her genitals." A variance between the charging instrument and proof at trial is fatal only if it operated to the defendant's surprise or prejudiced her rights. *See Rojas v. State*, 986 S.W.2d 241, 246 (Tex.Crim. App.1998). Texas courts treat a specific area of the genitals synonymously with the genitals as a whole. *See Wilson v. State*, 9 S.W.3d 852, 855 (Tex.App.—Austin 2000, no pet.); *Claycomb v. State*, 988 S.W.2d 922, 925 (Tex.App.—Texarkana 1999, pet ref'd). Therefore, Breckenridge could not have been surprised or prejudiced. Breckenridge's sixth point of error is overruled.

## LIMITING INSTRUCTION

In her seventh and eighth points of error, Breckenridge complains about the trial court's limiting instructions. The limiting instructions related to the testimony by N.L. concerning other instances in which Breckenridge may have exposed herself to him.

N.L. testified that in April of 1998, Breckenridge showed him a diary describing her sexual encounters with other people. N.L. stated that Breckenridge showed him the diary because she wanted to have sex with him, and after she showed him the diary, she started "hitting on him." N.L. stated the Breckenridge was wearing shorts and a shirt, but no underwear or bra. N.L. stated that Breckenridge exposed her "breasts, back, all that, her upper body, stomach, her legs, all that, but [he] didn't see her vagina. [He] just saw pubic hair."

In response to defense counsel's request, the trial court instructed the jury as follows:

THE COURT: Yes. Members of the jury, you are to consider the evidence just offered, if you give it any consideration at all, as you know that's in your discretion what evidence that you give validity and credibility to, but you are to consider it only for the purpose for which it is offered, that is, going to show the state of mind, if any, of the accused, Stephanie Breckenridge, at the time of the incidents, if any incidents did in fact occur, but the incidents that are alleged in the indictment. You are to consider it for that purpose only as to the state of mind of the defendant in connection with the charges against her in the indictment. Continue on.

The trial court then overruled defense counsel's request for "an instruction as to the standard of proof, beyond a reasonable doubt."

N.L. then continued testifying regarding another incident. On another occasion, N.L. testified that he was giving Breckenridge a massage, when T.B. brought a dildo into the room and used it to massage around Breckenridge's vagina. N.L. stated that Breckenridge was not wearing any clothes. N.L. further testified that T.B. got a cold bucket of ice and water, blindfolded Breckenridge, and dripped ice around her body.

The trial court interrupted the testimony to remind the jury as follows:

THE COURT: Again, members of the jury, the only weight, consideration you can give to the evidence just offered by the witness is solely limited to evidence regarding state of mind, if any, of the defendant at the time of the offenses that are alleged in the indictment, and you are not to consider that evidence for any other purpose other than going to show, if it does, the state of mind of the defendant in connection with the charges against her. The State has not charged anything like this against the accused as a criminal offense, and therefore you are strictly limited, as I have said, and as I will say in the closing instruction to you, the charge to you, to consider it for that purpose alone if you give it any consideration whatsoever. Go ahead.

Finally, N.L. testified regarding the events that occurred after M.T. and T.B. fell asleep on May 28, 1998. N.L. testified that he and Breckenridge drove to a lake about midnight. Breckenridge had on shorts and a top, but no bra or underwear. They laid in the back of Breckenridge's van. N.L. started massaging Breckenridge, who was not wearing any clothes. Breckenridge offered N.L. oral sex. N.L. declined. After about an hour, Breckenridge got dressed, they returned to her house, and N.L. went home.

The trial court again instructed the jury: THE COURT: Yes, again this evidence is admitted under those same instructions for your consideration, for what consideration you want to give to it, members of the jury, that is, what weight, credibility you want to give to the testimony, but it is strictly limited to the question of the state of mind, if any, of the accused on the occasions of the offenses that are brought against her in the indictment. We'll consider that evidence as to that issue only, and again, I'll refer you in greater detail and proper standards for consideration in the charge of the court that will be given to you at the end of all the evidence in the case.

 In her seventh point of error, Breckenridge complains that the trial court erred in overruling her objection to the written limiting instruction contained in the jury charge. The limiting instruction reads:

You are instructed that the Defendant is on trial only on the charges contained in the indictment. In reference to any evidence that the Defendant has participated in other transactions or acts, other than but similar to those charged in the indictment in this case, you are instructed that you cannot consider any such transactions or acts for any purpose unless you find and believe beyond a reasonable doubt that the Defendant participated in any such transactions or committed any such acts. Even then you may consider such evidence only for determining the intent, if any, of the Defendant in committing the acts alleged in the indictment, if she did commit any such alleged acts, if such evidence does so assist you in making any such determination, and such evidence will not be considered by you for any other purpose.

Breckenridge contends that the written instruction was erroneous because it was limited to transactions or acts "similar to" the actions charged. Breckenridge asserts that the limiting instruction needed to extend to all extraneous misconduct, not just that which was similar to the charged conduct, because the extraneous misconduct about which N.L. testified was not similar to the charged offenses.

Assuming, without deciding, that the trial court erred in including the phrase "similar to" in its written instruction, Breckenridge is required to show "some harm" resulted from the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984). Breckenridge contends that some harm is shown because a reasonable juror would not have believed that he could only consider N.L.'s testimony regarding the extraneous misconduct for the limited purpose of intent. Breckenridge's contention ignores that the trial court verbally instructed the jury after N.L. testified regarding each of the extraneous events that they were limited in how they could consider that testimony, and on two occasions told the jury that they would similarly be instructed in writing. In view of these verbal instructions, Breckenridge cannot demonstrate "some harm." Therefore, Breckenridge's seventh point of error is overruled.

In her eighth point of error, Breckenridge complains that the trial court erred when it failed to include a reasonable doubt instruction in its verbal limiting instruction. Rule 105 of the Texas Rules of Evidence states that when evidence is admitted for a limited purpose, the trial court must restrict the evidence to its proper scope and instruct the jury accordingly. TEX.R.EVID. 105. The trial court complied with this rule when it instructed the jury at the time the evidence was admitted. *See Rankin v. State*, 974 S.W.2d 707, 712 (Tex.Crim.App.1996). Neither Rule 105 nor any Texas case holds that the verbal limiting instruction must contain a beyond a reasonable doubt standard of proof instruction. But assuming, without deciding, that the trial court erred in refusing to include the beyond a reasonable doubt standard of proof within its limiting instruction, Breckenridge would be required to show that a substantial right was affected in order to demonstrate harm. *See Rankin v. State*, 995 S.W.2d 210, 215 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) (applying harm analysis under TEX.R.APP.P. 44.2(b) to complete failure to give timely limiting instruction). The court of appeals in *Rankin* explained:

A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim. App.1998).

*Rankin*, 995 S.W.2d at 215.

In this case, the jury was provided the beyond a reasonable doubt standard of proof in the written limiting instruction, and there is no evidence that the jury applied a different standard. Other than the attempt to challenge N.L.'s credibility by the lack of detail in his statements to the police, there was no evidence that N.L. was untruthful about the events. M.T. testified that he remembered N.L. and Breckenridge say they were going to the lake on May 28, 1998, and he saw N.L. leaving with Breckenridge. Examining the record as a whole, we have a fair assurance that the error, if any, in failing to include the beyond a reasonable doubt standard of proof in the verbal limiting instruction did not influence the jury. We overrule Breckenridge's eighth point of error.

### LEGAL AND FACTUAL SUFFICIENCY

In points of error nine through sixteen, Breckenridge asserts that the evidence is legally and factually insufficient to

support the conviction. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Johnson v. State,* 871 S.W.2d 183, 186 (Tex.Crim.App.1993). In our factual sufficiency review, we must consider all of the evidence to determine whether the judgment is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The trier of fact evaluates the credibility and demeanor of the witnesses and determines the weight to be given contradictory testimony. *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997). We are not permitted to reweigh the evidence, rather we defer to the trier of fact's findings, particularly those based on credibility determinations. *See id.* at 407–09.

To prove indecency with a child by exposure under section 21.11(a) of the Texas Penal Code, the State must prove: (1) the child was younger than 17 years and not the spouse of the accused; (2) the accused exposed any part of her genitals; (3) knowing the child was present; (4) with intent to arouse or gratify the sexual desire of any person. TEX.PEN.CODE ANN. § 21.11(a) (Vernon Supp.2000). Breckenridge challenges the findings that she "exposed" her "genitals," "with intent to arouse or gratify the sexual desire of any person."

Exposure has been defined as: "To deprive of concealment; to disclose or unmask something criminal, shameful, or the like." *Balfour v. State,* 993 S.W.2d 765, 769 (Tex.App.—Austin, pet.filed). The definition of "genitals" has previously been discussed. With regard to the incident on

May 28, 1998, both M.T. and N.L. testified that Breckenridge removed her swimming suit, she never attempted to cover up, she saw the boys looking at her or observing her, and they both saw her pubic hair or area. With regard to the incident on June 3, 1998, E.A. testified that Breckenridge and A.L. removed her underwear and that A.L. was kissing her crotch area. E.A. stated that he saw Breckenridge's pubic area. Although A.L. stated that he did not remember anything after Breckenridge's pants going down, the jury could have disbelieved him. In addition, section 21.11(a) does not require proof that the victim actually saw the accused's genitals. *See Uribe v. State,* 7 S.W.3d 294, 297 (Tex. App.—Austin 1999, pet. ref'd); *Balfour,* 993 S.W.2d at 769. We hold this evidence is legally and factually sufficient to prove that Breckenridge "exposed" her "genitals" to M.T. and N.L. on May 28, 1998, and to A.L. and E.A. on June 3, 1998.

The requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, remarks, and all surrounding circumstances. *McKenzie v. State,* 617 S.W.2d 211, 216 (Tex.Crim.App. [panel op.] 1981), *Claycomb v. State,* 988 S.W.2d 922, 925 (Tex.App.—Texarkana 1999, pet. ref'd). We hold that the jury could have inferred the requisite intent from Breckenridge's conduct and the surrounding circumstances in both instances. Points of error nine through sixteen are overruled.

The judgment of the trial court is affirmed.

HARDBERGER, Chief Justice, dissenting.

The majority holds that the trial court did not abuse its discretion in submitting a definition of "genitals" or "genitalia" in the jury charge. Because the term is not statutorily defined, I believe the trial court

erred in submitting the definition, and I respectfully dissent.

The general rule in criminal law regarding when definitions should be submitted to a jury is well-established. If a term or word is statutorily defined, the trial court must submit the statutory definition to the jury. *See Arline v. State*, 721 S.W.2d 348, 352 n. 4 (Tex.Crim.App.1986) (statutorily defined word must be included in the charge as part of the law applicable to the case); *Roise v. State*, 7 S.W.3d 225, 242 (Tex.App.—Austin 1999, pet. ref'd) (statutory definition should be submitted). If a term is not statutorily defined, whether a trial court is obligated to define the term depends on whether the term has such a common and ordinary meaning that jurors can be fairly presumed to know and apply that meaning. *See Russell v. State*, 665 S.W.2d 771, 780 (Tex.Crim.App.1983); *Phillips v. State*, 597 S.W.2d 929, 937 (Tex. Crim.App.1980). Terms that are not statutorily defined are typically to be understood as ordinary usage allows, and jurors are presumed to know and apply the common and ordinary meaning. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex.Crim. App.2000); *Davis v. State*, 949 S.W.2d 28, 29 (Tex.App.—San Antonio 1997, no pet.). As a result, if a word is not statutorily defined, the trial court is not required to define it. *See Martinez v. State*, 924 S.W.2d 693, 698 (Tex.Crim.App.1996); *Davis*, 949 S.W.2d at 29.

Under this general rule of law, if Breckenridge had requested that the trial court define the term "genitals" or "genitalia," the trial court would not have erred in refusing the request. *See Martinez*, 924 S.W.2d at 698; *Davis*, 949 S.W.2d at 29. The term "genitals" or "genitalia" has a common meaning, so no definition would be required. The question presented in this case, however, is the opposite of the question resolved by the general rule of law. We know that a trial court is not required to define a term that has a common meaning, but what if the trial court does?

In analyzing this issue, I would start with the proposition that "[l]anguage that is within the comprehension of persons of ordinary intelligence can seldom be made plainer by further defining or refining." *Toney v. State*, 3 S.W.3d 199, 206 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (quoting *Buel v. State*, 104 Wis. 132, 80 N.W. 78, 85 (1899)). What is the effect of providing a definition under those circumstances? I believe such a definition should be given the same effect as a surplus instruction or definition in civil cases. In civil cases, trial courts are instructed not to burden the jury with surplus instructions even if the instruction is a correct statement of the law. *See Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984). Surplus instructions are treated as impermissible comments that tilt or nudge the jury one way or the other. *See Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984).

In this case, Breckenridge's entire defense was centered on whether the jury understood the term "genitals" or "genitalia" as including pubic hair. The legislature, in enacting the criminal statute, chose not to define this term. A jury is entirely capable of deciding whether "genitals" or "genitalia" includes pubic hair. The jury should have been allowed to do so. The instruction caused harm for the following reasons. Most of the witnesses testified that they saw "pubic hair." By tailoring the instruction to the testimony, nothing was left for the jury to decide. The trial court had, in effect, directed the verdict. At the very least, the trial court's definition tilted or nudged the jury toward conviction. This is harmful error.

Words, phrases, and terms used in the Penal Code should be taken and under-

stood in their ordinary meaning in common language, except where legislatively defined. *Neumuller v. State,* 953 S.W.2d 502, 511 (Tex.App.—El Paso 1997, pet. ref'd). Trial courts should not be involved in the business of redefining words used in an ordinary sense by the Texas Legislature. *Id.* If the Texas Legislature believed that the term "genitals" or "genitalia" should be given a specific meaning, it would have provided one.

In a recent decision, the Texas Court of Criminal Appeals indicated that providing definitions that are not Constitutionally or statutorily mandated is ill-advised. *See Paulson v. State,* 28 S.W.3d 570, 572–73 (Tex.Crim.App.2000). The definition provided by the trial court in this case was not statutorily mandated, and the term has a commonly understood meaning. I would hold that the trial court erred in providing a definition instructing the jury that pubic hair constituted "genitals" or "genitalia."