

# NUMBER 13-09-127-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

REYMUNDO CASTILLO AKA JOKER,                                    Appellant,

v.

THE STATE OF TEXAS,                                            Appellee.

## On appeal from the 156th District Court
## of Bee County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Vela
### Memorandum Opinion by Justice Vela

A jury convicted appellant, Reymundo Castillo aka Joker, of three counts of aggravated sexual assault of a child (counts one, two, and four), *see* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2010), and two counts of indecency with a child by exposure (counts three and five). *See id.* § 21.11(a)(2)(A). The trial court

assessed punishment at sixty-five years' imprisonment for each count of aggravated sexual assault and ten years' imprisonment for each count of indecency with a child. The trial court assessed a $1,500 fine for count one, ordered the sentence for count two to run consecutively with the sentence for count one, and ordered the sentences for counts three, four, and five to run concurrently.

In four issues, Castillo challenges the legal and factual sufficiency of the evidence to support his convictions. We affirm.

## I. FACTUAL BACKGROUND

**A. State's Evidence**

In the evening of August 14, 2007, six-year-old V.V. arrived at "Beeville hospital" with her mother[1] and stepfather, Reymundo Castillo. Alicia Cowley, a sexual assault nurse examiner, testified V.V. was crying and had painful urination. She stated that, because "[i]t looked like [V.V. had] herpes" and would need "significant treatment," she was taken by ambulance to Driscoll Children's Hospital that evening.

The next day, Nancy Harper, M.D., a pediatrician at Driscoll Children's Hospital who had specialty training in child abuse and neglect, examined V.V. and stated that she "had extensive ulceration. She had these blisters and ulcers on her labia pretty much from the top of her private down along the side to the bottom on the right." She stated that tests showed that V.V. had two sexually transmitted diseases (STDs)—herpes and chlamydia.

During Dr. Harper's direct-examination, the prosecutor introduced State's exhibit 3, which is a document showing that on January 9, 2008, Castillo visited a clinic in

---

[1] V.V.'s mother did not testify, and she will remain anonymous.

Beeville and that he tested "negative for chlamydia." When the prosecutor, in reference to State's exhibit 3, asked Dr. Harper, "So does that mean that he [Castillo] couldn't have had sex with [V.V.]?", she said, "No. It just means he could have had treatment" for chlamydia.

On cross-examination, Dr. Harper testified she believed V.V. "was sexually abused" and said it was "[p]ossible" Castillo never had chlamydia. She also testified that V.V.'s sexual-assault exam was normal, except that she had chlamydia and herpes. She said that herpes is "very rarely not" transmitted sexually. She also stated that Castillo's test for herpes was "negative"; however, she did not know if he had a "blood test or a swab" to test for herpes. She said that "[b]lood tests for herpes are different because they are notoriously not helpful."

V.V., who was eight years old at the time of trial, testified that while living in Beeville, she shared a room with her two sisters and that her mother stayed in another room with "Rey," whom V.V. identified as appellant. During the State's case-in-chief, the prosecutor showed V.V. a boy doll and a girl doll. The record reflects that V.V. identified the "male sexual organ" of the boy doll as the "front part" and that she identified "the front private part" and the "back private part" of the girl doll.

V.V. testified that on more than one occasion, Castillo came into her room and removed her nightgown and panties. He then took off his pants, and she saw his "private part." When asked by the prosecutor if his private part was "little" or "big," she said, "Big." She testified Castillo would then "get on top of me." When the prosecutor asked her, "And when he got on top of you his private part was out of his pants? Was it out of his

3

underwear?", she said, "Yes." She said she "was trying to get away" from him, but he would put one hand on her mouth and use his other hand to hold her hands. When the prosecutor asked her, "And . . . what did you do when he was finished? Did you ever go to the bathroom?", she said, "Yes" and testified that she saw "[w]hite spots." After saying this, V.V. said, "And then he [Castillo] would tell me to go over there in the living room." She stated that while in the living room, "[h]e would want me to go over there by him and to put my mouth on his front part." When the prosecutor asked her, "So what would he make you do?", she said, "He would put my mouth on his front part." Next, the prosecutor asked her, "And . . . did you look . . . at his front part?" To this, she said, "Yes" and stated that "[i]t had white things on it." When asked "[l]ike what kind of white things," she said, "Like sores." When the prosecutor asked her, "When he would make you put your mouth on his private where did his private go? Was it just right on the lips or was it inside the mouth?", she said, "Inside of my mouth." When the prosecutor asked her, "Did you ever go to the bathroom after he put his private in your mouth?", she answered, "Yes" and said that she "checked" her "front part, and it was starting to bleed."

The prosecutor also asked V.V., "Do you remember anything about him [Castillo] using his fingers?" To this, she said, "Yes" and stated that "[h]e put them in my back part." She said he did this to her while she was "standing up." V.V. testified she was scared of Castillo "[b]ecause he said if I ever told anybody he would spank me." She testified that Castillo "would hit me with the belt" on her "bottom."

On cross-examination, when defense counsel asked V.V., "You use[d] to get those rashes all the time, didn't you?", she said, "Yes." Next, defense counsel asked her,

4

"Before even Rey [Castillo] was around, right?" To this, she said, "Yes." When defense counsel asked her, "So is it possible that this happened somewhere else and it wasn't Rey at all?", she said, "It was Rey all." Next, defense counsel asked her, "It was Rey all. Are you sure? Because this is very important." In response, she said, "Yes."

On re-direct-examination, when the prosecutor asked V.V., "And so the very first time that you got these sores was when you went to the hospital, right? Your mom took you to the hospital when you got those?", she said, "Yes." Next, the prosecutor asked her, "But then they came back after that first time?" To this, she said, "Yes."

Monica Pena, a family based safety services worker for the Texas Department of Family and Protective Services, testified she wanted Castillo to undergo a test for STDs. However, he did not have the test when she asked him to take it. Instead, he waited until the "beginning" of 2008 to take the test.

Stephanie Diaz, an investigator supervisor with Child Protective Services, testified that V.V. is not married to Castillo. On cross-examination, Diaz testified that CPS requested that V.V. and Castillo undergo testing for STDs. In January 2008, Castillo was tested for chlamydia and gonorrhea, and the results were negative. She stated CPS did not have Castillo tested for herpes She said that, "my understanding is that it's difficult to detect herpes in blood work and that you would have to have an actual outbreak" of herpes in order to test for that disease.

**B. Defense Evidence**

Castillo's mother, Ninfa Castillo, testified that at some point, Castillo, V.V.'s mother, and V.V.'s three daughters, including V.V., lived with her. She did not remember

5

V.V. being sad, upset, or crying. She said that V.V. and her two sisters did not appear to be afraid of Castillo.

Melissa Rosales testified she knew Castillo for fifteen years and that he is the father of her two sons. She had never been infected with any type of STD and said that their two sons had never been infected with either chlamydia or herpes.

Castillo testified he met V.V.'s mother in December 2005 and that he "started really seeing" V.V.'s mother in early January 2006. During that month, he and V.V.'s mother began living together in a Beeville apartment with her three daughters, including V.V. He married V.V.'s mother in March 2006, and at some point, he, V.V.'s mother, and her three daughters moved into a rental house in Beeville. Later, they moved in with Castillo's parents.

Castillo testified he never inappropriately touched either V.V. or her two sisters. He denied having sexual intercourse with either V.V. or her two sisters. He also denied that he had tried to make one of these girls perform oral sex on him, and he denied that he "stuck [his] finger inside one of their rear ends." He testified that he did not have herpes or chlamydia.

On cross-examination, Castillo testified he had "a rash twice" and explained that, "I got some piercings on my privates, and where they did the incision is where the rash was at." He said he "never had oozing sores on [his] penis" and said that he "never took antibiotics." When the prosecutor asked him, "Rey, you don't have a very good reputation, do you?", he said, "No, I sure don't."

6

## A. Aggravated Sexual Assault Of A Child

In issue one, Castillo argues the evidence is legally insufficient to support his three convictions for aggravated sexual assault of a child (counts one, two, and four). In issue two, he argues the evidence is factually insufficient to support these convictions. We review his sufficiency complaints under only the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996)).

### 1. Standard Of Review

"When conducting a legal sufficiency review, a court must ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '*it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson*, 443 U.S. at 318-19) (emphasis in original). "In doing so, we assess all of the evidence 'in the light most favorable to the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). "After giving proper deference to the fact finder's role, we will uphold the verdict unless a rational fact finder must have had reasonable doubt as to any essential element." *Id.* at 518. We must presume that the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326.

Our review of a legal sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d

7

273, 280-81 (Tex. Crim. App. 2008). "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

### 2. Applicable Law

Section 22.021(a) of the penal code provides, in relevant part, that a person commits the offense of aggravated sexual assault of a child if the person: (B) intentionally or knowingly:

> (i)     causes the penetration of the anus or sexual organ of a child by any means;
>
> (ii)     causes the penetration of the mouth of a child by the sexual organ of the actor;
>
> (iii)     causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
>
> (iv)     causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or
>
> (v)     causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and
>
> (2) if:
>
>        * * *
>
> (B)     the victim is younger than 14 years of age. . . .

TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i)-(v), (2)(B). A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault of a child. *Perez v. State,*

8

113 S.W.3d 819, 838 (Tex. App.–Austin 2003, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Tear v. State,* 74 S.W.3d 555, 560 (Tex. App.–Dallas 2002, pet. ref'd).

To prove count one as set forth in the charge, the State was required to establish beyond a reasonable doubt that Castillo "intentionally or knowingly cause[d] the penetration of the mouth of [V.V.], a child who was then and there younger than 14 years of age and not the spouse of the defendant, by the defendant's sexual organ . . . ." V.V. testified that after Castillo got off of her, he would tell her to go into the living room. While V.V. and Castillo were in the living room, he would put his "front part" inside of her mouth.

To prove count two as set forth in the charge, the State was required to establish beyond a reasonable doubt that Castillo "intentionally or knowingly cause[d] the penetration of the anus of [V.V.], a child who was then and there younger than 14 years of age and not the spouse of the defendant, by defendant's finger, . . . ." When the prosecutor asked V.V., "Do you remember anything about him [Castillo] using his fingers?", she said, "Yes." She testified that when she was standing up, "[h]e put them in my back part."

To prove count four as set forth in the charge, the State was required to establish beyond a reasonable doubt that Castillo "intentionally or knowingly cause[d] the penetration of the sexual organ of [V.V.], a child who was then and there younger than 14 years of age and not the spouse of the defendant, by defendant's sexual organ, . . . ." V.V. testified that after Castillo removed her nightgown and panties, he would take off his pants. After removing his pants, he would "get on top of" her. When the prosecutor

9

asked her, "And when he got on top of you his private part was out of his pants? Was it out of his underwear?", she said, "Yes." Even though V.V. did not testify[2] that Castillo penetrated her sexual organ with his sexual organ, she testified that after he got off of her, he engaged in oral sex with her. She said that after he put his "private" in her mouth, she "checked" her "front part, and it was starting to bleed." In addition, she testified his "front part" had "white things on it." When the prosecutor asked her, "Like what kind of white things," she said, "Like sores." Furthermore, the record showed that on August 14, 2007, V.V. was taken to Driscoll Children's Hospital and that Dr. Harper later diagnosed her with two STDs—herpes and chlamydia. While Castillo and V.V.'s mother were at Driscoll Children's Hospital with V.V., they were interviewed by a social worker, Lisa Porterfield. Porterfield testified Castillo told her he had been tested before for STDs and that "this was prior to he and [V.V.'s] mother becoming involved with each other, and . . . that . . . they had . . . been together about a year-and-a-half to two years." He told Porterfield "that the STD testing that he had gotten was negative and then shortly after they [he and V.V.'s mother] were together . . . he had developed a rash to his private area, and because his STD testing was negative he had sent [V.V.'s] mother to go get tested." Castillo told her that V.V.'s mother "was told that she was diagnosed with herpes." Porterfield stated that V.V.'s mother had been infected with herpes for "a couple of years."

Dr. Harper testified that Castillo said that "he had had this rash reoccur on several occasions. . . ." She said this "is very typical for the herpes virus." When the prosecutor asked Dr. Harper, "[W]hen is the appropriate time to be tested for herpes?", she said,

---

[2] We note that the prosecutor did not ask V.V. if appellant penetrated her sexual organ with his sexual organ, and V.V. never denied that he did not penetrate her sexual organ with his sexual organ.

10

"You have to actually have not only ulcers but some of the postule [sic] or blisters, . . . ." When asked, "And on a male where would those blisters most normally be?", she explained that "for a male, they could be on the head of your penis. They could be on the shaft of your penis. They could be down around the base of your penis." She testified that if a man did not want to have a positive herpes test, he could make sure he did not have any sores when he got tested. With respect to transmission of the herpes virus, Dr. Harper stated that, "[w]e call herpes infections highly suspicious for sexual abuse" because "[t]hey require close sort of steady sexual contact, genital-to-genital contact." She said herpes is "[v]ery rarely" transmitted nonsexually.

Based upon this evidence, a rational jury could reasonably conclude that Castillo had herpes and that he transmitted this disease to V.V. by penetrating her sexual organ with his sexual organ.

After viewing all of the evidence in the light most favorable to the verdict, a rational jury could have reasonably concluded beyond a reasonable doubt that while V.V. was younger than fourteen years of age and not Castillo's spouse, Castillo intentionally or knowingly (1) caused the penetration of her mouth with his sexual organ, (2) caused the penetration of her anus by his finger, and (3) caused the penetration of her sexual organ with his sexual organ. Issues one and two are overruled.

**B. Indecency With A Child By Exposure**

In issue three, Castillo argues the evidence is legally insufficient to support his convictions for indecency with a child by exposure (counts three and five). In issue four, he argues the evidence is factually insufficient to support his convictions for these same

offenses.

**1. Applicable Law**

Section 21.11(a) of the penal code provides that a person commits the offense of indecency with a child by exposure "if, with a child younger than 17 years of age, . . . the person:  . . . (2) with intent to arouse or gratify the sexual desire of any person:  (A) exposes the person's anus or any part of the person's genitals, knowing the child is present . . . ."  TEX. PENAL CODE ANN. § 21.11(a)(2)(A); *see Breckenridge v. State*, 40 S.W.3d 118, 128 (Tex. App.–San Antonio 2000, pet. ref'd).  A fact finder can infer the requisite, specific intent to arouse or gratify the sexual desire of any person "from the defendant's conduct, remarks, and all surrounding circumstances."  *Id.* (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)).  The testimony of a child victim alone is sufficient to support a conviction for indecency with a child.  *Perez,* 113 S.W.3d at 838; *see* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Tear,* 74 S.W.3d at 560.

**2. Analysis**

To prove counts three and five as set forth in the charge, the State was required to establish beyond a reasonable doubt that Castillo "did then and there, with intent to arouse or gratify the sexual desire of the defendant, intentionally or knowingly expose the defendant's genitals, knowing that [V.V.], a child younger than 17 years of age and not the defendant's spouse, was present, . . . ."

 V.V. testified that on one occasion, Castillo had removed her nightgown and panties and then took off his pants.  When he took off his pants, she saw his "private part."  When asked by the prosecutor if his private part was "little" or "big," she said, "Big."

12

She testified he would then "get on top of me." When the prosecutor asked her, "And when he got on top of you his private part was out of his pants? Was it out of his underwear?", she said, "Yes." She testified that on another occasion, Castillo told her to go to the living room. She stated that while in the living room, "[h]e would want me to go over there by him and to put my mouth on his front part." When the prosecutor asked her, "And . . . did you look . . . at his front part?", she said, "Yes", and stated that "[i]t had white things on it." When asked "[l]ike what kind of white things," she said, "Like sores." Based upon V.V.'s testimony, a rational jury could have found beyond a reasonable doubt that Castillo, on at least two occasions, while knowing that V.V., a child younger than seventeen years of age and not his spouse, was present, exposed his genitals to her with intent to arouse or gratify his sexual desire. We hold the evidence is legally sufficient to support his convictions for indecency with a child by exposure. Issues three and four are overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of March, 2011.

13