

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00140-CR

_____

WAYLON SPARKMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1429443D

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Waylon Sparkman was convicted by a jury of the third degree felony offense of indecency with a child and was sentenced to eight years' imprisonment. *See* TEX. PENAL CODE ANN. § 21.11(a)(2) (West 2011). Claiming that the evidence is legally insufficient to support his conviction, Sparkman appeals.[1] Because the evidence is legally sufficient for a reasonable jury to conclude beyond a reasonable doubt that Sparkman committed the offense of indecency with a child, we affirm the trial court's judgment.

## I.      Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[1]Originally appealed to the Second Court of Appeals in Fort Worth, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

## II.    Analysis

The indictment in this case alleged that Sparkman intentionally exposed his genitals, knowing a child younger than seventeen years-of-age was present, with the intent to arouse or gratify Sparkman's sexual desire. Sparkman committed the offense of indecency with a child "if, with a child younger than 17 years of age, whether the child is of the same or opposite sex," he (1) exposed any part of his genitals, (2) knowing the child was present, (3) with the intent to arouse or gratify his sexual desire. TEX. PENAL CODE ANN. § 21.11(a)(2)(A). We review the evidence in light of Sparkman's point of error.

In the summer of 2015, fifteen-year-old Candace and her sixteen-year-old brother, Chris,[2] along with their mother, moved into an apartment shared by thirty-one-year-old Sparkman, his sister, and her two children. When their mother moved out after approximately one month, Candace and Chris decided to stay. Over the summer, Sparkman and Candace began spending

---

[2]We refer to the minor victim and her brother by pseudonyms to protect their identities. *See* TEX. R. APP. P. 9.10.

time alone together, and family members began to suspect there was something going on between the two. Chris noticed that Candace had become protective of Sparkman.

On August 9, 2015, Chris awoke during the early morning hours to discover that Candace and Sparkman were not in the apartment. After searching for the pair around the apartment complex, Chris discovered Candace and Sparkman on the building's roof where he saw Candace covered by a blanket. Judging by the movement of the blanket, Chris suspected someone was with Candace. Chris began to scream at Candace and asked her what she was doing. As he approached Candace, Chris saw that Sparkman was with her. Chris assumed they were having sex, and, after a slight struggle, removed the blanket. When he did, Chris saw Sparkman on his back with his pants down, with his erect penis exposed. Candace was in the process of pulling her pants up. Sparkman apologized and told Chris that Chris could beat him up, and he would not fight back. Rather than attack Sparkman, Chris returned to the apartment and called his mother. When their mother arrived, Chris and Candace returned home with her.

Candace admitted that, over the summer, she grew close to Sparkman. She referred to Sparkman as a father figure who was always there for her, and she sported a tattoo on her wrist that said "Sparkman" placed there by Sparkman during the summer. Candace said Sparkman made her feel special because he saw her like nobody else did. She eventually admitted that she saw Sparkman as more than a father figure and used the phrase "[w]e were talking" to describe their relationship. It is apparent, however, that the relationship had evolved past talking, as evidenced by a photograph depicting a nude Candace about to kiss Sparkman and as evidenced by a second photograph of Sparkman and Candace kissing. Candace reluctantly admitted that she and

4

Sparkman had been intimate with each other. Her description of the events of August 9, however, stood in stark contrast to Chris' testimony.

Candace testified that she awoke early that morning and went to the roof of the apartment complex to look at the stars. She discovered that Sparkman was already on the roof, and they just sat and talked. According to Candace, she and Sparkman were lying on the roof when Chris arrived. Candace stated that neither she nor Sparkman lowered their pants and that both remained fully clothed at all times. She did not recall Chris removing the blanket, but she stated that he was angry and he punched her in the face. Candace was subpoenaed to testify and stated that she did not "want to be [in court]."[3]

Sparkman points to Chris' testimony that Sparkman's genitals were covered by a blanket and were only exposed when Chris removed the blanket. He, therefore, contends the evidence is insufficient to support his conviction because he did not expose his genitals, as contemplated by the statute. In support of this proposition, Sparkman relies on *Beasley v. State*, 906 S.W.2d 270 (Tex. App.—Beaumont 1995, no pet.). In *Beasley*, the complainant testified that she saw Beasley in his car and that "he didn't have clothing on from the upper leg to the waist." *Id*. at 271. The complainant could not see Beasley's penis because "[h]is hand shielded the penis area." *Id*. Consequently, the court determined that Beasley did not commit the offense of indecent exposure because he did not "expose" his penis. *Id*.

---

[3]After she returned with Chris to their mother's home, Candace ran way and returned to Sparkman that same month and repeated that sequence again in September. When she was removed from Sparkman's apartment for the second time, Candace was placed in two different drug abuse and suicide prevention facilities.

5

Our sister court has declined to follow *Beasley*. *Metts v. State*, 22 S.W.3d 544, 547 (Tex. App.—Fort Worth 2000, pet. ref'd). In *Metts*, the complainant saw Metts standing with his truck door open and his buttocks exposed while engaging in an act of self-gratification. *Id*. at 546. Although there was no evidence that the complainant actually saw his genitals, the court determined that the State only had to prove that Metts' genitals were exposed, not that the complainant perceived them. *Id*. at 547 (citing *Wilson v. State*, 9 S.W.3d 852, 856 (Tex. App.—Austin, no pet.) (upholding conviction for indecency with a child by exposure where victim did not see appellant's genitals)).[4]

In a case involving the exposure of the appellant's "private parts" to a boy under the age of sixteen years, the Texas Court of Criminal Appeals stated that in the context of discussing the term "expose," it would be "very difficult to find any single word in the English language that is used in a wider sense and is more flexible than this particular word." *Miller v. State*, 243 S.W.2d 175, 175 (Tex. Crim. App. 1951). The court recognized that the term "expose" was not defined in the statute pursuant to which Miller was prosecuted—just as it remains undefined in the current statute. Consequently, the court looked to the common meaning generally in use and concluded that the term "need not be limited to the meaning 'exposed to sight[,'] as contended for by appellant." *Id*. at 176.

In more recent decisions, courts have recognized that the offense of indecency with a child by exposure "is based on the defendant's actions and mental state, not the other person's

---

[4]While *Beasley* and *Metts* involved convictions for indecent exposure, our sister court recognized, "The statute under which appellant was charged, like indecency with a child by exposure, is based on the accused's actions and mental state, not the victim's comprehension," and concluded, "Because we cannot agree that section 21.08 requires that the victim of the offense see the accused's genitals, we respectfully decline to follow *Beasley*." *Metts*, 22 S.W.3d at 547.

6

comprehension." *Ex parte Amador*, 326 S.W.3d 202, 209 (Tex. Crim. App. 2010) (Cochran, J., concurring) (citing *Uribe v. State*, 7 S.W.3d 294, 297 (Tex. App.—Austin 1999, pet. ref'd) (upholding a conviction for indecency with a child by exposure even though the child did not see the defendant's genitals)); *Breckenridge v. State*, 40 S.W.3d 118, 124–25 (Tex. App.—San Antonio 2000, pet. ref'd) ("[S]ection 21.11(a) does not require proof that the victim actually saw the accused's genitals."). In spite of this authority, though, Sparkman claims that his genitals were never exposed, as they were at all times covered with a blanket. Based on the foregoing authority, we reject this argument and hold that the evidence is legally sufficient to support Sparkman's conviction.

## III. Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     March 16, 2017
Date Decided:       April 28, 2017

Do Not Publish

7