In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-345 CR


____________________



DONALD PAUL MAURO, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 04-12-10095-CR






 OPINION 


 The State indicted Donald Paul Mauro on nineteen counts for sexual offenses that
he allegedly committed between September and November of 2004. In June 2005, the
State dismissed one count, and a jury convicted Mauro on the remaining eighteen counts. 
The jury assessed Mauro's punishment on each count as follows: 


 count one - two years' imprisonment and community supervision; 




 count two - five years' imprisonment; 

 count three - ten years' imprisonment; 

 count four and count nineteen - twenty years' imprisonment on each;


 


 counts five through thirteen - five years' imprisonment and community supervision
on each respective count; and 

 counts fifteen through eighteen - fourteen and one-half years' imprisonment on each
respective count. 



 Subsequently, the State recommended that the trial court stack Mauro's sentences so
that he would serve a total of seventy-three years in prison. In response, Mauro argued that
punishing him under both counts three and four would violate his constitutional rights by 
subjecting him to multiple punishments for the "same" conduct. He made a similar double
jeopardy argument about counts eighteen and nineteen. See U.S. Const. amend. V; Tex.
Const. art. 1, § 14.

 The trial court cumulated Mauro's sentences to require that he serve forty-four years
in the Institutional Division of the Texas Department of Criminal Justice (TDCJ), with credit
for time served. Because the trial court accepted Mauro's double jeopardy argument, the
court requested the State to recommend whether the court should base Mauro's sentence on
either count three or count four, and either on count eighteen or count nineteen. The State
objected to the trial court's request that it make an election in favor of two of these four
counts and thereby eliminate Mauro's punishment on the remaining two. However, subject
to its objection, the State advised the court that it would abandon count four and count
nineteen. 

 With respect to the stacked convictions, the trial court ordered Mauro to serve his
sentences as follows:


 on counts seventeen and eighteen - fourteen and one-half years' confinement on each
count, with these sentences to be served first and concurrently; 


 


 on counts fifteen and sixteen - fourteen and one-half years on each count, with 
Mauro to begin serving his sentences on these counts immediately after finishing his
sentences for counts seventeen and eighteen; 


 on count three - ten years upon completion of his sentence on counts fifteen and
sixteen; 


 on count two - five years upon completion of his sentence on count three; 


 on count one and counts five through thirteen - ten years of community supervision
following the completion of his confinement. (1) 




 Both Mauro and the State appeal from the trial court's judgment. In his first issue,
Mauro challenges the legal and factual sufficiency of the evidence to support his conviction
under count two, which charged him with indecency with a child by causing her to expose
her genitals. In issues two and three, Mauro complains about the trial court's abandoning
count four and count nineteen, and instead basing his sentence on counts three and eighteen.
Finally, Mauro complains in issues four and five that the TDCJ erroneously interpreted the
trial court's judgment to require his incarceration for fifty-eight and one-half years. Mauro
requests that we reform the trial court's judgment to clarify the stacking order. 

 The State complains the trial court erred by requiring it to make an election regarding
Mauro's punishment and subsequently by disregarding the jury's verdict on counts four and
nineteen. The State argues that a conviction for the sexual assault of a child and a conviction
arising from the improper relationship between a school employee and a student are separate
offenses for double jeopardy purposes even if the conduct is identical. Also, the State argues
that the statute proscribing sexual contact between students and employees of schools 
expressly allows multiple punishments. The State concludes that subjecting Mauro to
multiple punishments for sexual assaults and for improper school employee relationships
does not violate the Double Jeopardy Clause of the United States or Texas Constitutions. 

Sufficiency of Evidence - Standards of Review

 With respect to the legal sufficiency of the evidence in a criminal case, we review all
of the evidence in a light most favorable to the verdict, and we decide if any rational trier of
fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Evans v. State, 202
S.W.3d 158, 161 (Tex. Crim. App. 2006). In a factual sufficiency review, we consider all
of the evidence in a neutral light and reverse only if we conclude, from some objective basis
in the record, that the great weight and preponderance of evidence contradicts the jury's
verdict. Watson v. State, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006). We cannot
determine that a finding is "clearly wrong" or "manifestly unjust" simply because we might
have found otherwise had we been the fact finder. Id. at 417. In examining a factual
sufficiency challenge, we defer to the fact finder's determination of the credibility of the
evidence. Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003).

Analysis of Mauro's Sufficiency Arguments


 In issue one, Mauro challenges the sufficiency of the evidence to support his
conviction on count two of the indictment. In count two of the indictment (2), the State charged
Mauro with indecency with a child by exposure, a violation of section 21.11(a) of the Penal
Code. In pertinent part, this statute provides:

 (a) A person commits an offense if, with a child younger than 17
years and not the person's spouse, whether the child is of the
same or opposite sex, the person:

 (1) engages in sexual contact with the child or causes the
child to engage in sexual contact; or

 (2) with intent to arouse or gratify the sexual desire of any
person:

 (A) exposes the person's anus or any part of the
person's genitals, knowing the child is present; or

 (B) causes the child to expose the child's anus or any
part of the child's genitals.


Tex. Pen. Code Ann. § 21.11(a) (Vernon 2003). 

 In this case, the evidence showed that the female victim and her boyfriend came to
Mauro's office to get a pass for skipping class. While in his office, Mauro provided the
victim's boyfriend with a vibrator and explained to him how it worked. Then, Mauro undid
the victim's belt and pants so that her boyfriend could use the vibrator on her genitals. 
Subsequently, Mauro told the victim to use the vibrator on herself, and she complied. Both
the boyfriend and the victim testified that the vibrator contacted the victim's genitals. 
Nevertheless, they both testified that no one ever saw the victim's genitals. 

 Mauro's factual and legal sufficiency arguments depend upon whether the statute's
use of the term "expose" requires proof that the victim's genitals were exposed to another's
eyesight. In support of his argument, Mauro cites two cases, Beasley v. State, 906 S.W.2d
270 (Tex. App.-Beaumont 1995, no pet.) and McGee v. State, 804 S.W.2d 546 (Tex.
App.-Houston [14th Dist.] 1991, no pet.). Beasley and McGee address Penal Code section
21.08, a statute prohibiting an individual's indecent exposure of his genitals. See Beasley,
906 S.W.2d at 271; McGee, 804 S.W.2d at 547; Tex. Pen. Code Ann. § 21.08 (Vernon
2003). With its Chief Justice dissenting, the Beasley Court reversed the defendant's indecent
exposure conviction because "there was no exposure within the meaning of the statute" when
the defendant held his hand over his genitals and blocked the victim's view. Beasley, 906
S.W.2d at 272. In reversing Beasley's conviction, this Court relied on McGee, which
affirmed a conviction for indecent exposure. Id. The McGee Court noted that the
defendant's genitals were "open to view." McGee, 804 S.W.2d at 547.

 Here, the State contends that section 21.11of the Texas Penal Code does not require
proof of exposure to one's eyesight. The State relies on Miller v. State, 156 Tex. Crim. 389,
243 S.W.2d 175 (Tex. Crim. App. 1951), in which the Court of Criminal Appeals stated that
the meaning of "expose" need not be limited to "exposed to sight." (3) 243 S.W.2d at 176. 
Breckenridge v. State, 40 S.W.3d 118 (Tex. App.-San Antonio 2000, pet. ref'd) also supports
the State's argument. The Breckenridge Court explained:

 Whether or not the witnesses could actually see the genitals due to the
defendant's pubic hair or due to a failure to inspect closely enough is not
relevant to proving exposure. Conviction for exposure does not require the
victim or witness to actually see the genitals, [s]ee Uribe v. State, 7 S.W.3d
294, 297 (Tex. App.-Austin 1999, pet. ref'd); the crime is exposing,
unmasking, or uncovering the genitals. See Balfour v. State, 993 S.W.2d 765,
769 (Tex. App.-Austin 1999, pet. [ref'd]). The charges in this case concern
not what the victims saw, but what the defendant exposed. The defendant was
able to argue the theory that only pubic hair was exposed, and the jury rejected
the theory. 


40 S.W.3d at 124-25. 


 Resolving the question before us thus depends on the statutory meaning of the term
"expose." The Penal Code does not define "expose." Thus, we must construe the term as
required by the rules of statutory construction. Tex. Pen. Code Ann. § 1.05(b) (Vernon
2003). Unless the context of a term's use requires a different construction, we interpret the
legislature's intent pursuant to certain provisions of the Code Construction Act, including
section 311.011. Id. This provision states: "Words and phrases shall be read in context and
construed according to the rules of grammar and common usage." Tex. Gov't Code Ann.
§ 311.011(a) (Vernon 2005).

Dictionaries determine a word's common use. "Expose" means: 


 1 a: to lay open (as to attack, danger, trial, or test) : make accessible to
something that may prove detrimental : deprive of shelter, protection, or care
<~ him to the weather> <~ troops needlessly> <a coast exposed to severe
gales> b : to submit or subject to an action or influence <~children to good
books) . . . c : to abandon (an infant) esp. by leaving in the open . . . 2 : to lay
open to view : lay bare : make known : set forth : EXHIBIT, DISPLAY
<exposing a sun-tanned back>.


 . . . .


 WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 802 (2002). 


 In this case, the evidence showed that Mauro caused the victim's genitals to be
exposed to a vibrator. Mauro did so by providing the vibrator, encouraging its use, and by
loosening the victim's pants so that her genitals became accessible without being seen. 
Mauro watched while the boyfriend, and then the victim, used the vibrator on the victim's
genitals. Although Mauro never saw the victim's genitals, his conduct exposed them by
making them accessible. The conduct described by the witnesses is sufficient, in our opinion,
to fall within the conduct the legislature intended to prohibit in section 21.11. See Tex. Pen.
Code Ann. § 21.11.

 McGee and Beasley are distinguishable. McGee does not involve the statute we
consider here and does not require proof that the victim viewed the defendant's genitals. 804
S.W.2d at 547. Rather, McGee construes section 21.08 of the Penal Code and holds that
evidence showing that the victim saw the defendant's genitals is sufficient to support a
conviction. Id.; see Tex. Pen. Code Ann. § 21.08(a) (Vernon 2003).

 Beasley also is distinguishable from the facts before us. First, Beasley, like McGee,
construed the indecent exposure statute, section 21.08, and not section 21.11, which concerns
indecency with a child. See Tex. Pen. Code Ann. §§ 21.08, 21.11; Beasley, 906 S.W.2d at
271. Second, a person commits an offense under section 21.08 by exposing his genitals. 
Under section 21.11, however, a person commits an offense by exposing his genitals or
causing the child to expose hers. Thus, section 21.11 prohibits acts not covered under
section 21.08. Third, the facts of Beasley are distinguishable: the victim's genitals in
Beasley were not exposed to direct contact, as exists here. See 906 S.W.2d at 271-72. 
Because Beasley is factually distinguishable and was decided under section 21.08 rather than
section 21.11, we need not revisit whether Beasley was correctly decided. Nevertheless, we
do not interpret Beasley as holding that a visual sighting must always be proven to establish
a violation of section 21.08 of the Penal Code. 

 By applying the rules of statutory construction and considering Miller's interpretation
of "expose" under the prior statute, we conclude that the evidence in this record is legally and
factually sufficient to support Mauro's conviction on count two. Viewing the record in the
light most favorable to the verdict, we find that a rational jury could have concluded beyond
a reasonable doubt that Mauro caused the female victim to expose her genitals to direct
contact with the vibrator to gratify his sexual desire. As a result, the evidence is legally
sufficient to support the jury's guilty verdict on count two. In addition, a neutral review of
the entire record does not show that the proof of guilt is so obviously weak as to undermine
our confidence in the jury's determination, nor does it show that the proof of Mauro's guilt
is greatly outweighed by contrary proof. We hold that the evidence is factually sufficient to
support the verdict. We overrule issue one.



Double Jeopardy

 The State and Mauro both raise double jeopardy issues for our review. Mauro does
not challenge the State's right to appeal. 

 In issues one and two, the State contends that the trial court erred when it decided not
to punish Mauro on counts four and nineteen. The State also argues that the prohibition
against double jeopardy does not negate a clearly-expressed legislative intent to impose
multiple punishments for the same conduct.

 Mauro's complaints concern the procedure followed by the trial court in its remedy
of his double jeopardy complaint. In issue two, Mauro complains about the trial court's 
procedure for deciding which of his convictions to disregard. In issue three, Mauro asserts
the trial court erred by electing to base his punishment on counts three (ten years) and
eighteen (fourteen years and six months), rather than counts four (twenty years) and nineteen
(twenty years).

 The jury convicted Mauro in count four of the indictment for engaging in an improper
relationship with a female student; the trial court disregarded this finding, electing to base
his punishment on count three, a conviction for sexual assault of a child. The jury convicted
Mauro in count nineteen for engaging in an improper relationship with a separate female
student; the trial court disregarded this finding, electing to base his punishment on count
eighteen, a conviction for sexual assault of a child. The trial court concluded that punishing
Mauro under these circumstances for crimes of engaging in an improper relationship and for
crimes of sexual assault violated the Double Jeopardy Clause when the convictions for the
separate offenses stemmed from conduct with the same child. 

 Because it accepted Mauro's double jeopardy argument, the trial court's remedy was
to disregard Mauro's convictions on counts four and nineteen. The trial court did not
pronounce sentence on counts four and nineteen. The trial court entered judgments of
conviction against Mauro and sentenced him on all other counts.

Analysis of State's Double Jeopardy Issues 


 The Fifth Amendment of the Constitution of the United States, commonly called the
Double Jeopardy Clause, provides: "[N]or shall any person be subject for the same offence
to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In a similar provision,
the Texas Constitution provides: "No person, for the same offense, shall be twice put in
jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense,
after a verdict of not guilty in a court of competent jurisdiction." Tex. Const. art. 1, § 14. 
Among other things, these clauses generally protect a person against multiple punishments
for the "same" offense. Ex parte Cavazos, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). 
Whether an offense is the "same" for double jeopardy purposes is determined by evaluating
whether each provision requires proof of a fact that the other does not. Blockburger v.
United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Parrish v. State, 869
S.W.2d 352, 354 (Tex. Crim. App. 1994). Thus, we compare the proof required to show a
violation of Penal Code section 22.011 with that required under section 21.12, the two
statutes at issue in this case. The sexual assault statute found at section 22.011 provides, in
pertinent part:

(a) A person commits an offense if the person:

 (1) . . . . 

 (2) intentionally or knowingly:

 (A) causes the penetration of the anus or sexual organ
of a child by any means;

 (B) causes the penetration of the mouth of a child by
the sexual organ of the actor;

 (C) causes the sexual organ of a child to contact or
penetrate the mouth, anus, or sexual organ of
another person, including the actor;

 (D) causes the anus of a child to contact the mouth,
anus, or sexual organ of another person, including
the actor; or

 (E) causes the mouth of a child to contact the anus or
sexual organ of another person, including the
actor.


Tex. Pen. Code Ann. § 22.011(a) (Vernon Supp. 2006). (4) 

 The statute that prohibits sexual contact between students and employees of schools
is section 21.12 of the Penal Code. It provides:

 (a) An employee of a public or private primary or secondary school commits an
offense if the employee engages in sexual contact, sexual intercourse, or
deviate sexual intercourse with a person who is enrolled in a public or private
primary or secondary school at which the employee works and who is not the
employee's spouse.


(b) An offense under this section is a felony of the second degree.


(c) If conduct constituting an offense under this section also constitutes an offense
under another section of this code, the actor may be prosecuted under either
section or both sections.


Tex. Pen. Code Ann. § 21.12 (Vernon Supp. 2006) (emphasis added). 

 "Legislatures, not courts, prescribe the scope of punishments." Missouri v. Hunter,
459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Because the Double Jeopardy
Clause does not prohibit a legislature from authorizing cumulative punishments under two
statutes that proscribe the same conduct, the question before us is whether the legislature
intended to impose multiple punishments for violating these two provisions. See 459 U.S.
at 368-69. If so, the imposition of multiple sentences does not violate the Constitution. Id.
at 367-68 (citing Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d
275 (1981)). Therefore, we must first determine whether the language of section 22.12(c)
expresses legislative intent to authorize multiple punishments for school employees who
engage in the prohibited conduct. See Langs v. State, 183 S.W.3d 680, 685 (Tex. Crim. App.
2006) (stating that "same elements" test applies "when the legislature's intent is not clearly
expressed"). 

 In Hunter, the United States Supreme Court evaluated a Missouri statute that
penalized the use of guns. 459 U.S. at 361. Hunter challenged whether he could be punished
under a statute that prohibited robbery and also be punished under a statute that prohibited
armed criminal actions. Id. at 362. The Hunter Court explained that the Missouri statute
contained the following language: "The punishment imposed pursuant to this subsection
shall be in addition to any punishment provided by law for the crime committed by, with, or
through the use, assistance, or aid of a dangerous or deadly weapon." Id. The Supreme
Court held that Hunter's punishment under both statutes was constitutionally permissible
despite his double jeopardy claim. The Supreme Court reasoned that the Missouri legislature
"specifically authorize[d] cumulative punishment under two statutes, regardless of whether
those two statutes proscribe the 'same' conduct. . . ." Id. at 368. 

 Section 21.12(c) of the Texas Penal Code is not identical to the language used by the
Missouri legislature, which authorized multiple punishments. Id. at 362. Instead, section
21.12(c) expressly allows prosecutions to occur under both section 22.011(a) and section
21.12(c). See Tex. Pen. Code Ann. §§ 21.12(c), 22.011(a). Our statutory construction rules
require that we construe these statutes to effect the legislature's objectives. Tex. Pen. Code
Ann. § 1.05 (a) (Vernon 2003). Unless the statute's context requires a different construction,
we must presume that the legislature intended the entire statute to be effective. Tex. Pen.
Code Ann. § 1.05(b); Tex. Gov't Code Ann. § 311.021(2) (Vernon 2005). 

 In contrast to Texas statutes that allow multiple prosecutions, our legislature has also
enacted another statute that allows prosecution under one of two statutes, but not both. See
Tex. Hum. Res. Code Ann. § 32.0391(c) (Vernon Supp. 2006) (providing that conduct
constituting an offense under this section as well as other statutes "may be prosecuted under
either this section or the other provision"). When it chose to do so, the legislature created
a statute that allows a defendant's prosecution under only one of several potentially
applicable statutes. 

 Further, if a statute's plain language is unambiguous, we construe a statute according
to its plain meaning, unless doing so leads "to absurd consequences that the Legislature could
not have possibly intended. . . ." Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App.
1991) (en banc). In this context, it appears unlikely that the legislature would allow multiple
prosecutions but allow only one punishment. Allowing only one punishment would not 
further the legislature's goal to punish and deter the type of conduct proscribed by section
21.12 of the Penal Code. See Tex. Pen. Code Ann. § 21.12. Instead, the legislature's goal
of punishing the school employee's breach of trust would be largely redundant if the same
conduct was usually, if not always, sufficient to support a conviction under Texas's exposure
or assault statutes. 

 Because statutory construction rules require that we construe a provision to render the
entire statute effective, we conclude that by expressly allowing prosecution under both
statutes, the legislature intended to allow the State to exact multiple punishments. Our
conclusion regarding the legislative intent in enacting this statute's "both sections" provision
finds support in Ex parte Pool, 71 S.W.3d 462 (Tex. App.-Tyler 2002, no pet.). In denying
Pool's writ of habeas corpus, the Tyler Court of Appeals relied upon a similar "both
sections" provision to conclude that the Double Jeopardy Clause did not bar Pool's
prosecution for burglary because he had been previously convicted for violating a protective
order. Id. at 468-69. The protective order, issued prior to the burglary, provided that Pool
was not to go to or near the residence of his wife except under certain agreed conditions. Id.
at 464. After the issuance of the protective order, Pool broke into the residence and battered
his wife. Id. The State charged Pool with violating the protective order and burglary. Id. 
Pool pled guilty to violating the protective order and then argued that the Double Jeopardy
Clause barred his prosecution for the burglary. Id. at 464-65. The Tyler Court of Appeals
held that Pool's double jeopardy claim failed, even though the charges arose out of the same
conduct. Id. at 468. In reaching its conclusion, the court relied in part on the "both sections"
provision in the protective order statute. Id.; see Tex. Pen. Code Ann. § 25.07(c) (Vernon
Supp. 2006). 

 Likewise, the Supreme Court in Hunter rejected the appellant's double jeopardy
argument even though that statute subjected him to multiple punishments. 459 U.S. at 368-69. Implicit in the Court's reasoning is a rejection of the proposition that the Double
Jeopardy Clause prohibits multiple prosecutions when the statutory language authorizes
multiple punishments but is silent on the question of multiple prosecutions. 

 We decline to hold that the legislature must make express that which is implicit: 
"both sections" provisions need not expressly state that they allow both multiple prosecutions
and multiple punishments. By allowing multiple prosecutions, the legislature clearly
intended to allow multiple punishments. When the legislature authorizes multiple
punishments, even if the punishment is for the same conduct, the Double Jeopardy Clause
is no bar. As the United States Supreme Court explained:

Thus, the question of what punishments are constitutionally permissible is not
different from the question of what punishments the Legislative Branch
intended to be imposed. Where Congress intended, as it did here, to impose
multiple punishments, imposition of such sentences does not violate the
Constitution.


Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). 

 Even if the legislative intent of section 21.12(c) was unclear, we would reach the same
result. When the legislative intent is not clear, the courts use the Blockburger "same
elements" test "to determine if two convictions constitute 'multiple punishment' under the
Double Jeopardy Clause[.]" Langs, 183 S.W.3d at 685 (citing Blockburger, 284 U.S. at 304). 
To determine whether there are two offenses, or only one, a court must decide "'whether
each provision requires proof of a fact which the other does not.'" Langs, 183 S.W.3d at 685
(quoting Blockburger, 284 U.S. at 304). Thus, we look to the elements alleged in the
indictments at issue. Parrish, 869 S.W.2d at 354 ("[T]he essential elements relevant to a
jeopardy inquiry are those of the charging instrument, not of the penal statute itself."). 

 In Mauro's case, the indictments for the two offenses contain elements that are
different. In the improper relationship charges, counts four and nineteen, the State alleged
that when Mauro committed the offenses he was "an employee of a public secondary school,
. . ." and his victim was "a person who was enrolled" in school. These allegations are not
found in the sexual assault charges, counts three and nineteen; proving sexual assault does
not require the State to prove that the defendant was a school employee. In addition, the
sexual assault counts allege that Mauro's victims were children. The improper relationship
counts contain no similar allegation; section 21.12 of the Penal Code does not require proof
that the victim is a child. See Tex. Pen. Code Ann. § 21.12. Because the offenses for the
statutes at issue require proof of different elements, Mauro's offenses as alleged in the
indictment are not considered the "same" for double jeopardy purposes. See Blockburger,
284 U.S. at 304. 

 In conclusion, we sustain the State's issues one and two and remand the case to allow
the trial court to assess punishment on counts four and nineteen in accord with our opinion
and the Texas Code of Criminal Procedure. See generally Tex. Code Crim. Proc. Ann.
arts. 42.03, 42.08 (Vernon 2006). We hold that neither the Double Jeopardy Clause of the 

U.S. Constitution nor that of the Texas Constitution prohibits Mauro's punishments under
count four and count nineteen in addition to his punishments under count three and eighteen. 
 Analysis of Mauro's Double Jeopardy Issues 


 In light of our resolution of the State's double jeopardy issues, we need not resolve
Mauro's issues two and three regarding the procedure the trial court followed in deciding
which of the counts to disregard. The result we reach allows the trial court to sentence
Mauro on counts four and nineteen, the counts Mauro asserts the trial court should have
sentenced him on, as well as counts three and eighteen. As a result, issues two and three are
moot.TDCJ Sentence Calculation

 In his fourth and fifth issues, Mauro complains that the trial court's cumulation order
differs from the sentence it pronounced in open court. However, Mauro's brief and argument
reveal that his concern arises from the TDCJ's records, which he asserts reflect that "his
cumulated judgments of conviction total 58.5 years confinement, as opposed to the 44 years
confinement intended and ordered by the trial court, a difference of 14.5 years." The State
responds that the TDCJ's records are not in the appellate record, and as a result, Mauro
cannot demonstrate any error. 

 We have reviewed the sentencing hearing and the judgments entered by the trial court.
The trial court's judgments conform to the sentences the court orally pronounced at the
sentencing hearing and are not ambiguous. Both the sentencing hearing and the judgments
reflect that the trial court exercised its discretion to stack Mauro's sentences, the effect of
which is to incarcerate Mauro for forty-four years. To the extent Mauro complains that the
judgments do not conform to the oral pronouncement of sentence, his issues are overruled. 
 In its brief, the State advises that it has "verified that TDCJ-ID miscalculated
Applicant's serve-all date at 58.5 years and asked TDCJ-ID to correct its error." Mauro also
complains in his brief of an alleged error by the TDCJ in calculating his sentence. However,
the TDCJ's records are not part of the record on appeal. Further, "an appellate court's review
of the record itself is generally limited to the evidence before the trial court at the time of the
trial court's ruling." Whitehead v. State, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004)
(citation omitted). Appellate courts generally do not consider factual assertions outside the
record.

 Although we would have jurisdiction to correct an error made by a trial judge, the
alleged error here is one made by the TDCJ, a party that is not before us in this appeal. 
However, even if we construed Mauro's appeal as a request for a writ of mandamus to
correct the TDCJ's allegedly erroneous calculations, our mandamus jurisdiction is governed
by section 22.221 of the Texas Government Code. That section expressly limits the
mandamus jurisdiction of the courts of appeals to writs against a district court judge or
county court judge in the court of appeals' district and to all writs necessary to enforce the
court of appeals' jurisdiction. Tex. Gov't Code Ann. § 22.221 (Vernon 2004). Thus, even
if we had the TDCJ's records before us in a writ of mandamus, it is not apparent that we
could correct the alleged error about which Mauro complains.

Conclusion


 In conclusion, we overrule Mauro's first through fifth issues. Except for the trial
court's refusal to sentence Mauro on counts four and nineteen, we affirm the trial court's
judgment. We sustain the State's issues regarding counts four and nineteen, and remand the
case to allow the trial court to pronounce sentence and enter judgments on those two counts. 
 REVERSED AND REMANDED IN PART, AFFIRMED IN PART. 


 ____________________________

 HOLLIS HORTON

 Justice

 



Submitted on December 21, 2006

Opinion Delivered April 18, 2007

Publish


Before Gaultney, Kreger, and Horton, JJ.
1. The trial court ordered that the sentences on count one and counts five through
thirteen were to be served concurrently with his other sentences.
2. Count 2 of the indictment alleges that Mauro, "on or about November 01, 2004 in
Montgomery County . . . did then and there, with the intent to arouse or gratify the sexual
desire of the Defendant, intentionally or knowingly cause [the female victim], a child
younger than 17 years and not the Defendant's spouse, to expose her genitals." 
3. In Miller, the Court discussed article 535c, the provision in effect at that time, which
penalized indecent exposure to minors. Miller v. State, 156 Tex. Crim. 389, 243 S.W.2d 175,
175 (Tex. Crim. App. 1951). The statute provided, in pertinent part, that: "It shall be
unlawful for any person with lascivious intent to knowingly and intentionally expose his or
her private parts or genital organs to any other person, male or female, under the age of
sixteen (16) years." Act of February 27, 1950, 51st Leg., 1st C.S., ch. 9, § 1, 1950 Tex. Gen.
Laws 50. 
4. Although the legislature amended the sexual assault statute after the commission
of the offense, there were no changes in the statute that are pertinent to this appeal. 
Therefore, we cite the current version.