

**NUMBERS**
**13-10-00421-CR**
**13-10-00517-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WILLIAM SAM GRANT,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 13th District Court
### of Navarro County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez, and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, William Sam Grant, was charged by two separate indictments for

sexual assault of a child and indecency with a child by exposure.[1]  *See* TEX. PENAL

---

[1]     These two cases, in cause numbers 13-10-00421-CR (sexual assault of a child) and

CODE ANN. §§ 22.011, 21.11 (West 2003). The cases were consolidated at the trial court and tried to a jury together. The jury found Grant guilty on both charges and sentenced him to twenty years' confinement in the Texas Department of Criminal Justice—Institutional Division on the charge of sexual assault of a child, and ten years' probation on the charge of indecency with a child by exposure. The court ordered the sentences to run consecutively. In six issues, Grant contends that the evidence was legally insufficient to support his conviction on either charge; the trial court permitted the State to introduce inadmissible evidence; the jury charge contained fundamental error; and the trial court erred in denying his motion for new trial based on newly discovered evidence. We affirm.

## I. BACKGROUND[2]

On Thanksgiving evening 2007, Grant—age 32—and a group of people including his daughter, C.G., and his daughter's friend, K.H.—both age 14—were playing cards and drinking alcohol. It is undisputed that both C.G. and K.H. became intoxicated. Thereafter, C.G. and K.H. went to sleep in Grant's bed with the light in an adjacent bathroom and the television turned on. C.G. testified that at some point after falling asleep, she awoke because "the bed was shaking and [she] heard [K.H.] making noises" and "moaning." C.G. testified that when she rolled over, she observed that Grant was "on top of K.H." She further testified that she observed Grant penetrating K.H. with his

13-10-00517-CR (indecency with a child), have been consolidated into this opinion on appeal.

[2] Originally arising in the Tenth Judicial District, these cases were transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. See TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. See TEX. R. APP. P. 41.3.

sex organ, and that she started to scream at which time Grant "jumped up" and ran into the closet.   After an argument ensued between C.G. and K.H., Grant apologized to C.G. and told her that he and K.H. were "just kissing."   C.G. testified that she did not believe Grant because she "kn[e]w what [she] saw."   The two girls eventually went to sleep on the couch, and Grant drove K.H. home the next morning.   After the event was reported to police and C.G. and K.H. were interviewed, the sheets on Grant's bed were sent to the DPS laboratory in Waco for analysis.   The DPS lab supervisor, Blake Goertz, testified that stains on the sheets were a mixture of Grant's semen and K.H.'s epithelial cells. He opined that the mixtures were a result of sexual activity between Grant and K.H. Grant's expert, Angela Ross, testified that it could not be determined when the specimens were left and that she believed they were left at different times.   At trial, K.H. testified that, because she was intoxicated, she did not remember the events that took place at Grant's house.

## II.   DISCUSSION

### A.   Sufficiency of the Evidence

By his first and second issues, Grant challenges the legal sufficiency of the evidence to support his conviction on each of the two charged offenses.   Our sufficiency review must be under "a rigorous and proper application" of the *Jackson* standard of review.   *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010).   Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 902 n.19.   "[T]he fact-finder's role as weigher of

3

the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of facts proved, and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically correct jury charge, in the sexual assault case, the State was required to prove beyond a reasonable doubt that Grant: (1) intentionally or knowingly (2) penetrated the sexual organ of K.H., a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A). In the indecency with a child case, the State was required to prove beyond a reasonable doubt that Grant: (1) exposed his genitals (2) while knowing that C.G. was present (3) with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(a)(2)(A).

A defendant's intent may be inferred from his words, acts, and conduct. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). "Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring) (citing *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)). Additionally, It is well settled law that the testimony of a child

4

sexual abuse victim alone is sufficient to support a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2007); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005).

As to the sexual assault of a child charge, Grant recognizes in his brief that C.G. explicitly testified that she observed Grant's penis inside of K.H's vagina. Grant, however, contends that "it would be impossible for C.G. to have seen [Grant's] penis inside K.H. in a split second upon awakening from a deep sleep in a poorly lit room." First, we reject this contention outright because it is not supported by the evidence. C.G.'s testimony was that she observed Grant and K.H. for several seconds before finally realizing what was happening. Additionally, the evidence indicated that the light from the adjacent bathroom lit the room enough for C.G. to observe what occurred. Regardless, such questions are for the jury to determine as the sole judge of the credibility of the witnesses. *Wesbrook*, 29 S.W.3d at 111. There was also testimony indicating that stains on Grant's sheets indicated that sexual activity had occurred between him and K.H. Though this testimony was contradicted by Grant's expert, we must view the evidence in the light most favorable to the prosecution. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19. When so viewed, the evidence is clearly sufficient to permit a rational trier of fact to find each element of the sexual assault of a child charge beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We overrule Grant's first issue.

As to the indecency with a child charge, here again, C.G. testified that she observed Grant's penis while he was next to her on the bed. Grant argues on appeal that even if C.G. did see Grant's genitals, there was no evidence that Grant exposed

5

himself to her with the intent to arouse any person, including himself. Grant points to the fact that when C.G. woke up, Grant immediately jumped up and hid in the closet—demonstrating that he did not intend to expose himself to her at all. The evidence was clear, however, that Grant exposed his genitals, knowing that C.G. was mere inches away. Additionally, his intent to satisfy his own sexual desire by doing so in C.G.'s presence was a question that the jury was permitted to determine based on the circumstances surrounding the event. *See Patrick*, 906 S.W.2d at 487; *Breckenridge v. State*, 40 S.W.3d 118, 128 (Tex. App.—San Antonio 2000, pet. ref'd) ("The requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, remarks, and all surrounding circumstances."). Therefore, when viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found all of the essential elements of indecency with a child beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We overrule Grant's second issue.

## B. Jury Charge Error

By his third issue, Grant contends that the jury charge contained fundamental error in that it allowed the jury to convict him of indecency with a child for "intentionally or knowingly" exposing his genitals to C.G., rather than by requiring the jury to find the specific intent to arouse or gratify the sexual desire of any person.

The complained-of portion of the jury charge reads as follows:

Now if you find from the evidence beyond a reasonable doubt that . . . GRANT, did then and there, with intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly exposed the defendant's genitals, knowing that [C.G.], a child younger than 17 years and not the spouse of the defendant, was present, then you will find the defendant guilty of the offense of Indecency with a Child as charged in the

6

indictment.

"Our first duty in analyzing a jury-charge issue is to decide whether error exists. Then, if we find error, we analyze that error for harm." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). The degree of harm required to reverse the trial court's judgment depends on whether or not the appellant objected to the charge before it was given to the jury. *Id.* Under *Almanza v. State*, if the defendant has properly objected to the charge, we need only find "some harm" to reverse the trial court's judgment. *Id.* at 743–44 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). If the defendant fails to object, however, or states that he has no objection to the charge, "we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.* In determining whether egregious harm exists, we examine the charge in its entirety, the state of the evidence, the argument of counsel, and any other relevant information in the record. *Id.*

Here, Grant did not object to the jury charge as given and, therefore, must demonstrate egregious harm in order to prevail on appeal. *See id.* Assuming, without deciding, that the inclusion of this language was error, it was not harmful because the charge, as given, still required the jury to find the specific intent "to arouse or gratify the sexual desire of [the] defendant." If anything, the addition of the requirement that he must also have intentionally or knowingly exposed himself increased the burden on the State, and therefore was not harmful to Grant. *See Caballero v. State*, 927 S.W.2d 128, 131 (Tex. App.—El Paso 1996, no pet.) (concluding that the appellant was "not harmed by an element of proof that was additional to that actually necessary to convict").

7

Accordingly, we overrule Grant's third issue.

## C. Admitted Evidence

By his fourth and fifth issues, Grant contends that the trial court erred in admitting hearsay evidence of Grant's alleged extraneous bad acts and by allowing the prosecution to bolster the testimony of witnesses with evidence of their prior consistent statements.

"Because trial courts are in the best position to decide questions of admissibility, we review a trial court's decision regarding the admissibility of evidence under an abuse of discretion standard." *Rodriguez v.* State, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (noting that a trial court "has the best vantage from which to decide" admissibility questions)). Accordingly, this Court must uphold a trial court's admissibility decision "when that decision is within the zone of reasonable disagreement." *Id.* In applying this standard, we will not reverse a trial court's admissibility decision solely because we disagree with it. *Id.* (citing *Montgomery*, 810 S.W.2d at 391; *Robbins v. State*, 88 S.W.3d 256, 259–60 (Tex. Crim. App. 2002)).

If a trial court's ruling falls outside the zone of reasonable disagreement, but is nevertheless not error of a constitutional dimension, that error is only reversible when it has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If there is a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect, we must affirm the trial court's judgment. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

### 1. Hearsay—Extraneous Bad Acts

During the trial, C.G. testified that when she told her aunt that she witnessed Grant having sex with K.H., C.G.'s aunt replied that she was not surprised because, according to C.G., "whenever [C.G.'s aunt] would have friends over at their house [Grant] would take them and have sex with them, too." Counsel for Grant objected to this testimony as hearsay, and the trial court overruled the objection.

On appeal, Grant first contends that admitting this testimony was error under Texas Rule of Evidence 404(b) because it was evidence of extraneous bad acts constituting inadmissible character evidence in order to show conformity therewith. TEX. R. EVID. 404(b). However, Grant did not object to the testimony on this basis, and therefore, any error under rule 404(b) is not preserved for our review. *See* TEX R. APP. P. 33.1; *Banda v. State*, 890 S.W.2d 42, 62 (Tex. Crim. App. 1994) (noting that error is only preserved where the defendant's trial objection comports with the issue raised on appeal).

In addition, Grant contends that admitting the testimony was error under rule of evidence 802 because it was inadmissible hearsay. *See* TEX. R. EVID. 802. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). A statement not offered to prove the truth of the matter asserted is not hearsay. *Dinkins v. State*, 894 S.W.2d 330, 347–48 (Tex. Crim. App. 1995). The State contends that the testimony was not offered to prove the truth of the matter asserted, but rather "for the purpose of detailing the circumstances under which C.G. first told an adult of the sexual assault and was meant to assist the jury's understanding of the events by providing

context" and to "show C.G.'s state of mind." The State's position is supported in the record by the fact that the questions leading up to the complained of responses revolved around the fact that C.G. had not told her grandmother or anyone else about the incident for several days, and that her aunt's comments that she was not surprised made C.G. feel that it was not necessary to report the event. Following the complained-of response, counsel for the State asked C.G. if her aunt told her to report the incident, whether her aunt said it was wrong, and whether her aunt told her to tell another adult, to each of which, C.G. replied "No, ma'am." This tends to show that the State was indeed seeking to show C.G.'s state of mind and why she failed to report the incident earlier. Additionally, we note that the prosecution neither pressed the issue nor mentioned the testimony in its closing arguments. Accordingly, we conclude that whether the statement constituted hearsay was within the zone of reasonable disagreement, and therefore, the trial court did not abuse its discretion in admitting the testimony. *See Rodriguez*, 203 S.W.3d at 841. Grant's fourth issue is overruled.

## 2. Hearsay—Prior Consistent Statements

The State presented the testimony of Kristi Skains, a forensic interviewer from the Child Advocacy Center in Navarro County. Skains testified that she interviewed both C.G. and K.H., and Skains essentially echoed the testimony of each girl, noting that C.G. told K.H. that K.H. had sex with Grant and that C.G. told her she awoke and saw Grant having sex with K.H. Counsel for Grant objected to this testimony as hearsay, and the trial court overruled the objection.

Assuming, without deciding, that the admission of this evidence constituted an abuse of discretion, we will only reverse such non-constitutional error when it has a

10

substantial and injurious effect or influence on the jury's verdict. *King*, 953 S.W.2d at 271. Though we agree with Grant that this evidence was cumulative, the fact that it echoed the comments previously made by K.H. and C.G. about their interviews with Skains and added no additional information leads us to conclude that the jury would have considered this evidence regardless of whether Skains repeated it, and the evidence did not become any more convincing because it was relayed by Skains. Therefore, based on an examination of the record as a whole, we are fairly assured that the error, if any, did not influence the jury or had but slight effect. *See Johnson*, 967 S.W.2d at 417. We overrule Grant's fifth issue.

## D.  Motion for New Trial

By his sixth issue, Grant contends that the trial court erred in denying his motions for new trial in each case because the State withheld exculpatory evidence in violation of *Brady,* and that evidence "should cast such a doubt on the proceedings as to render the verdict contrary to the law and evidence." *See Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Grant contends that two "diary entries" written by K.H. were not provided to the defense before the guilt-innocence phase of the trial and that one of these hand-written notes contained the following exculpatory evidence: "[C.G.] told C.J. that Thinkgiving [sic] night me and her dad or the guy named Jimmy had sex and he told my parents. Well I kinda [sic] remember having sex but I don't know who it was with!" Grant contends that this would have been material evidence that C.G. had at one time named two possible perpetrators of the sexual assault.

We review a trial court's ruling on a motion for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 111 (Tex. Crim. App. 2007). "We view the evidence in the light

11

most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). "We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable." *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* (citing *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004)).

The requirements for obtaining a new trial upon newly discovered or "newly available" evidence are: (1) the newly discovered evidence was unknown to the movant at the time of his trial; (2) the movant's failure to discover the evidence was not due to his want of diligence; (3) the materiality of the evidence is such as would probably bring about a different result in another trial; and (4) the evidence is admissible, and not merely cumulative, corroborative, collateral, or impeaching. *Drew v. State*, 743 S.W.2d 207, 226 (Tex Crim. App. 1985). Additionally, to find reversible error under *Brady*, a defendant must show that: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 66 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under each of these tests, the defendant bears the burden of showing that the evidence was not made available to him at the time of trial. *Id.*; *Drew*, 743 S.W.2d at 226.

Here, at the hearing on the motion for new trial, Grant's trial counsel testified that she received "multiple copies" of the offense report prepared by the investigating

12

detectives. The State provided the report as part of the parties' discovery agreement, which also provided that all physical evidence would be made available for inspection, including "documents, papers, books, accounts, letters, photographs, objects, tangible things or records which constitute or contain evidence material to any matter involved in this case." In the offense report, one detective noted that he received "two letters . . . stating that [K.H.] remembered having sex with someone that night she just did not remember who." Based on the record, it is clear that Grant was given notice that the letters existed, was given the opportunity to inspect the letters on request, and any failure to do so was due to his own want of diligence. Accordingly, without need to address the remaining factors of the relevant tests, we conclude that the trial court did not abuse its discretion in denying Grant's motion for new trial, nor did the State's actions constitute a *Brady* violation. *See Hampton*, 66 S.W.3d at 612; *Drew*, 743 S.W.2d at 226. Grant's sixth issue is overruled.

### III. CONCLUSION

Having overruled all of Grant's issues on appeal, we affirm the trial court's judgments.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
18th day of August, 2011.