NUMBERS

13-10-00421-CR

13-10-00517-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

WILLIAM SAM GRANT,                                                       Appellant,

 

v.

 

THE STATE OF TEXAS,                                   
Appellee.

                                                                     


 

On appeal from the 13th
District Court

of Navarro County,
Texas.

                                                                     


 

MEMORANDUM OPINION

 

       Before
Chief Justice Valdez and Justices Rodriguez, and Benavides

                      Memorandum
Opinion by Justice Benavides

 

            Appellant,
William Sam Grant, was charged by two separate indictments for sexual assault
of a child and indecency with a child by exposure.[1]
 See Tex. Penal Code Ann.
§§ 22.011, 21.11 (West 2003).  The cases were consolidated at the trial
court and tried to a jury together.  The jury found Grant guilty on both
charges and sentenced him to twenty years’ confinement in the Texas Department
of Criminal Justice—Institutional Division on the charge of sexual assault of a
child, and ten years’ probation on the charge of indecency with a child by
exposure.  The court ordered the sentences to run consecutively.  In six
issues, Grant contends that the evidence was legally insufficient to support
his conviction on either charge; the trial court permitted the State to
introduce inadmissible evidence; the jury charge contained fundamental error;
and the trial court erred in denying his motion for new trial based on newly
discovered evidence.  We affirm.

I.  Background[2]

            On
Thanksgiving evening 2007, Grant—age 32—and a group of people including his
daughter, C.G., and his daughter’s friend, K.H.—both age 14—were playing cards
and drinking alcohol.  It is undisputed that both C.G. and K.H. became
intoxicated.  Thereafter, C.G. and K.H. went to sleep in Grant’s bed with the
light in an adjacent bathroom and the television turned on.  C.G. testified
that at some point after falling asleep, she awoke because “the bed was shaking
and [she] heard [K.H.] making noises” and “moaning.”  C.G. testified that when
she rolled over, she observed that Grant was “on top of K.H.”  She further
testified that she observed Grant penetrating K.H. with his sex organ, and that
she started to scream at which time Grant “jumped up” and ran into the closet. 
After an argument ensued between C.G. and K.H., Grant apologized to C.G. and
told her that he and K.H. were “just kissing.”  C.G. testified that she did not
believe Grant because she “kn[e]w what [she] saw.”  The two girls eventually
went to sleep on the couch, and Grant drove K.H. home the next morning.  After
the event was reported to police and C.G. and K.H. were interviewed, the sheets
on Grant’s bed were sent to the DPS laboratory in Waco for analysis.  The DPS
lab supervisor, Blake Goertz, testified that stains on the sheets were a
mixture of Grant’s semen and K.H.’s epithelial cells.  He opined that the
mixtures were a result of sexual activity between Grant and K.H.  Grant’s
expert, Angela Ross, testified that it could not be determined when the
specimens were left and that she believed they were left at different times. 
At trial, K.H. testified that, because she was intoxicated, she did not
remember the events that took place at Grant’s house.

II. 
Discussion

A. 
Sufficiency of the Evidence

            By
his first and second issues, Grant challenges the legal sufficiency of the
evidence to support his conviction on each of the two charged offenses.  Our
sufficiency review must be under “a rigorous and proper application” of the Jackson
standard of review.  See Brooks v. State, 323 S.W.3d 893, 906 (Tex.
Crim. App. 2010).  Under this standard, “the relevant question is whether,
after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 319
(1979); see Brooks, 323 S.W.3d at 902 n.19.  “[T]he fact-finder’s role
as weigher of the evidence is preserved through a legal conclusion that upon
judicial review all of the evidence is to be considered in the light
most favorable to the prosecution.”  Jackson, 443 U.S. at 319 (emphasis
in original); see also Tex. Code
Crim. Proc. Ann. art. 38.04 (West 1979) (“The jury, in all cases, is the
exclusive judge of facts proved, and the weight to be given to the
testimony . . . .”); Wesbrook v. State, 29 S.W.3d
103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”).

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  Under a hypothetically correct jury charge, in the
sexual assault case, the State was required to prove beyond a reasonable doubt
that Grant:  (1) intentionally or knowingly (2) penetrated the sexual organ of
K.H., a child.  See Tex. Penal
Code Ann. § 22.011(a)(2)(A).  In the indecency with a child case,
the State was required to prove beyond a reasonable doubt that Grant: (1)
exposed his genitals (2) while knowing that C.G. was present (3) with the
intent to arouse or gratify the sexual desire of any person.  Id.
§ 21.11(a)(2)(A).

A
defendant’s intent may be inferred from his words, acts, and conduct.  Patrick
v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  “Intent and knowledge
are fact questions for the jury, and are almost always proven through evidence
of the circumstances surrounding the crime.”  Manrique v. State, 994
S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring) (citing Robles
v. State, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)).  Additionally, It is
well settled law that the testimony of a child sexual abuse victim alone is
sufficient to support a conviction.  See Tex.
Code Crim. Proc. Ann. art. 38.07 (West 2007); Martinez v. State,
178 S.W.3d 806, 814 (Tex. Crim. App. 2005).

            As
to the sexual assault of a child charge, Grant recognizes in his brief that
C.G. explicitly testified that she observed Grant’s penis inside of K.H’s
vagina.  Grant, however, contends that “it would be impossible for C.G. to have
seen [Grant’s] penis inside K.H. in a split second upon awakening from a deep
sleep in a poorly lit room.”  First, we reject this contention outright because
it is not supported by the evidence.  C.G.’s testimony was that she observed
Grant and K.H. for several seconds before finally realizing what was
happening.  Additionally, the evidence indicated that the light from the
adjacent bathroom lit the room enough for C.G. to observe what occurred. 
Regardless, such questions are for the jury to determine as the sole judge of
the credibility of the witnesses.  Wesbrook, 29 S.W.3d at 111.  There
was also testimony indicating that stains on Grant’s sheets indicated that
sexual activity had occurred between him and K.H.  Though this testimony was
contradicted by Grant’s expert, we must view the evidence in the light most
favorable to the prosecution.  See Jackson, 443 U.S. at 319; Brooks,
323 S.W.3d at 902 n.19.  When so viewed, the evidence is clearly sufficient to
permit a rational trier of fact to find each element of the sexual assault of a
child charge beyond a reasonable doubt.  See Jackson, 443 U.S. at 319. 
We overrule Grant’s first issue.

            As
to the indecency with a child charge, here again, C.G. testified that she
observed Grant’s penis while he was next to her on the bed.  Grant argues on
appeal that even if C.G. did see Grant’s genitals, there was no evidence that
Grant exposed himself to her with the intent to arouse any person, including
himself.  Grant points to the fact that when C.G. woke up, Grant immediately
jumped up and hid in the closet—demonstrating that he did not intend to expose
himself to her at all.  The evidence was clear, however, that Grant exposed his
genitals, knowing that C.G. was mere inches away.  Additionally, his intent to
satisfy his own sexual desire by doing so in C.G.’s presence was a question
that the jury was permitted to determine based on the circumstances surrounding
the event.  See Patrick, 906 S.W.2d at 487; Breckenridge v. State,
40 S.W.3d 118, 128 (Tex. App.—San Antonio 2000, pet. ref’d) (“The requisite
specific intent to arouse or gratify the sexual desire of any person can be
inferred from the defendant's conduct, remarks, and all surrounding
circumstances.”).  Therefore, when viewing the evidence in the light most
favorable to the prosecution, we conclude that a rational trier of fact could
have found all of the essential elements of indecency with a child beyond a
reasonable doubt.  See Jackson, 443 U.S. at 319.  We overrule Grant’s
second issue.

B.  Jury
Charge Error

            By
his third issue, Grant contends that the jury charge contained fundamental
error in that it allowed the jury to convict him of indecency with a child for
“intentionally or knowingly” exposing his genitals to C.G., rather than by
requiring the jury to find the specific intent to arouse or gratify the sexual
desire of any person.

            The
complained-of portion of the jury charge reads as follows:

Now if you find from the evidence
beyond a reasonable doubt that . . . GRANT, did then and there,
with intent to arouse or gratify the sexual desire of said defendant,
intentionally or knowingly exposed the defendant’s genitals, knowing that
[C.G.], a child younger than 17 years and not the spouse of the defendant, was
present, then you will find the defendant guilty of the offense of Indecency
with a Child as charged in the indictment.

 

“Our first duty in analyzing a
jury-charge issue is to decide whether error exists.  Then, if we find error,
we analyze that error for harm.”  Ngo v. State, 175 S.W.3d 738, 743
(Tex. Crim. App. 2005) (citing Middleton v. State, 125 S.W.3d 450, 453
(Tex. Crim. App. 2003)).  The degree of harm required to reverse the trial
court’s judgment depends on whether or not the appellant objected to the charge
before it was given to the jury.  Id.  Under Almanza v. State, if
the defendant has properly objected to the charge, we need only find “some
harm” to reverse the trial court’s judgment.  Id. at 743–44 (citing Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh’g)).  If
the defendant fails to object, however, or states that he has no objection to
the charge, “we will not reverse for jury-charge error unless the record shows
‘egregious harm’ to the defendant.”  Id.  In determining whether egregious
harm exists, we examine the charge in its entirety, the state of the evidence,
the argument of counsel, and any other relevant information in the record.  Id. 


Here,
Grant did not object to the jury charge as given and, therefore, must
demonstrate egregious harm in order to prevail on appeal.  See id. 
Assuming, without deciding, that the inclusion of this language was error, it
was not harmful because the charge, as given, still required the jury to find
the specific intent “to arouse or gratify the sexual desire of [the]
defendant.”  If anything, the addition of the requirement that he must also
have intentionally or knowingly exposed himself increased the burden on the State,
and therefore was not harmful to Grant.  See Caballero v. State, 927
S.W.2d 128, 131 (Tex. App.—El Paso 1996, no pet.) (concluding that the
appellant was “not harmed by an element of proof that was additional to that
actually necessary to convict”).  Accordingly, we overrule Grant’s third issue.

C. 
Admitted Evidence

            By
his fourth and fifth issues, Grant contends that the trial court erred in admitting
hearsay evidence of Grant’s alleged extraneous bad acts and by allowing the
prosecution to bolster the testimony of witnesses with evidence of their prior
consistent statements.

            “Because
trial courts are in the best position to decide questions of admissibility, we
review a trial court’s decision regarding the admissibility of evidence under
an abuse of discretion standard.”  Rodriguez v. State, 203 S.W.3d 837,
841 (Tex. Crim. App. 2006) (citing Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990) (noting that a trial court “has the best vantage
from which to decide” admissibility questions)). Accordingly, this Court must
uphold a trial court’s admissibility decision “when that decision is within the
zone of reasonable disagreement.”  Id.  In applying this standard, we
will not reverse a trial court's admissibility decision solely because we
disagree with it.  Id. (citing Montgomery, 810 S.W.2d at 391; Robbins
v. State, 88 S.W.3d 256, 259–60 (Tex. Crim. App. 2002)).

            If
a trial court’s ruling falls outside the zone of reasonable disagreement, but
is nevertheless not error of a constitutional dimension, that error is only
reversible when it has a substantial and injurious effect or influence in
determining the jury’s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  If there is a fair assurance from an examination of
the record as a whole that the error did not influence the jury, or had but
slight effect, we must affirm the trial court’s judgment.  Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

            1. 
Hearsay—Extraneous Bad Acts

            During
the trial, C.G. testified that when she told her aunt that she witnessed Grant
having sex with K.H., C.G.’s aunt replied that she was not surprised because,
according to C.G., “whenever [C.G.’s aunt] would have friends over at their
house [Grant] would take them and have sex with them, too.”  Counsel for Grant
objected to this testimony as hearsay, and the trial court overruled the
objection.

            On
appeal, Grant first contends that admitting this testimony was error under
Texas Rule of Evidence 404(b) because it was evidence of extraneous bad acts
constituting inadmissible character evidence in order to show conformity
therewith.  Tex. R. Evid. 404(b). 
However, Grant did not object to the testimony on this basis, and therefore,
any error under rule 404(b) is not preserved for our review.  See Tex R. App. P. 33.1; Banda v. State,
890 S.W.2d 42, 62 (Tex. Crim. App. 1994) (noting that error is only preserved
where the defendant’s trial objection comports with the issue raised on
appeal).

            In
addition, Grant contends that admitting the testimony was error under rule of
evidence 802 because it was inadmissible hearsay.  See Tex. R. Evid. 802.  Hearsay is a
statement, other than one made by the declarant while testifying at trial,
offered in evidence to prove the truth of the matter asserted.  Tex. R. Evid. 801(d).  A statement not
offered to prove the truth of the matter asserted is not hearsay.  Dinkins
v. State, 894 S.W.2d 330, 347–48 (Tex. Crim. App. 1995).  The State
contends that the testimony was not offered to prove the truth of the matter
asserted, but rather “for the purpose of detailing the circumstances under which
C.G. first told an adult of the sexual assault and was meant to assist the
jury’s understanding of the events by providing context” and to “show C.G.’s
state of mind.”  The State’s position is supported in the record by the fact
that the questions leading up to the complained of responses revolved around
the fact that C.G. had not told her grandmother or anyone else about the
incident for several days, and that her aunt’s comments that she was not
surprised made C.G. feel that it was not necessary to report the event. 
Following the complained-of response, counsel for the State asked C.G. if her
aunt told her to report the incident, whether her aunt said it was wrong, and
whether her aunt told her to tell another adult, to each of which, C.G. replied
“No, ma’am.”  This tends to show that the State was indeed seeking to show
C.G.’s state of mind and why she failed to report the incident earlier. 
Additionally, we note that the prosecution neither pressed the issue nor mentioned
the testimony in its closing arguments.  Accordingly, we conclude that whether
the statement constituted hearsay was within the zone of reasonable
disagreement, and therefore, the trial court did not abuse its discretion in
admitting the testimony.  See Rodriguez, 203 S.W.3d at 841.  Grant’s
fourth issue is overruled.

            2. 
Hearsay—Prior Consistent Statements

            The
State presented the testimony of Kristi Skains, a forensic interviewer from the
Child Advocacy Center in Navarro County.  Skains testified that she interviewed
both C.G. and K.H., and Skains essentially echoed the testimony of each girl,
noting that C.G. told K.H. that K.H. had sex with Grant and that C.G. told her
she awoke and saw Grant having sex with K.H.  Counsel for Grant objected to
this testimony as hearsay, and the trial court overruled the objection.

            Assuming,
without deciding, that the admission of this evidence constituted an abuse of
discretion, we will only reverse such non-constitutional error when it has a
substantial and injurious effect or influence on the jury’s verdict.  King,
953 S.W.2d at 271.  Though we agree with Grant that this evidence was
cumulative, the fact that it echoed the comments previously made by K.H. and
C.G. about their interviews with Skains and added no additional information
leads us to conclude that the jury would have considered this evidence
regardless of whether Skains repeated it, and the evidence did not become any
more convincing because it was relayed by Skains.  Therefore, based on an
examination of the record as a whole, we are fairly assured that the error, if any,
did not influence the jury or had but slight effect.  See Johnson, 967
S.W.2d at 417.  We overrule Grant’s fifth issue.

D.  Motion
for New Trial

            By
his sixth issue, Grant contends that the trial court erred in denying his
motions for new trial in each case because the State withheld exculpatory
evidence in violation of Brady, and that evidence “should cast such a
doubt on the proceedings as to render the verdict contrary to the law and
evidence.”  See Brady v. Maryland, 373 U.S. 83 (1963). Specifically,
Grant contends that two “diary entries” written by K.H. were not provided to
the defense before the guilt-innocence phase of the trial and that one of these
hand-written notes contained the following exculpatory evidence:  “[C.G.]
told C.J. that Thinkgiving [sic] night me and her dad or the guy named
Jimmy had sex and he told my parents.  Well I kinda [sic] remember having sex
but I don’t know who it was with!”  Grant contends that this would have been
material evidence that C.G. had at one time named two possible perpetrators of
the sexual assault.

            We
review a trial court's ruling on a motion for an abuse of discretion.  Webb
v. State, 232 S.W.3d 109, 111 (Tex. Crim. App. 2007).  “We view the
evidence in the light most favorable to the trial court’s ruling and uphold the
trial court’s ruling if it was within the zone of reasonable disagreement.”  Id.
(citing Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).  “We
do not substitute our judgment for that of the trial court, but rather we
decide whether the trial court’s decision was arbitrary or unreasonable.”  Id. 
Thus, a trial court abuses its discretion in denying a motion for new trial
only when no reasonable view of the record could support the trial court’s ruling. 
Id. (citing Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim.
App. 2004)).

            The
requirements for obtaining a new trial upon newly discovered or “newly
available” evidence are:  (1) the newly discovered evidence was unknown to the
movant at the time of his trial; (2) the movant's failure to discover the
evidence was not due to his want of diligence; (3) the materiality of the
evidence is such as would probably bring about a different result in another
trial; and (4) the evidence is admissible, and not merely cumulative,
corroborative, collateral, or impeaching.  Drew v. State, 743 S.W.2d
207, 226 (Tex Crim. App. 1985).  Additionally, to find reversible error under Brady,
a defendant must show that:  (1) the State failed to disclose evidence,
regardless of the prosecution's good or bad faith; (2) the withheld evidence is
favorable to him; and (3) the evidence is material, that is, there is a
reasonable probability that had the evidence been disclosed, the outcome of the
trial would have been different.  Hampton v. State, 66 S.W.3d 603, 612
(Tex. Crim. App. 2002).  Under each of these tests, the defendant bears the
burden of showing that the evidence was not made available to him at the time
of trial.  Id.; Drew, 743 S.W.2d at 226.

            Here,
at the hearing on the motion for new trial, Grant’s trial counsel testified
that she received “multiple copies” of the offense report prepared by the
investigating detectives.  The State provided the report as part of the
parties’ discovery agreement, which also provided that all physical evidence
would be made available for inspection, including “documents, papers, books,
accounts, letters, photographs, objects, tangible things or records which
constitute or contain evidence material to any matter involved in this case.” 
In the offense report, one detective noted that he received “two
letters . . . stating that [K.H.] remembered having sex with
someone that night she just did not remember who.”  Based on the record, it is
clear that Grant was given notice that the letters existed, was given the
opportunity to inspect the letters on request, and any failure to do so was due
to his own want of diligence.  Accordingly, without need to address the
remaining factors of the relevant tests, we conclude that the trial court did not
abuse its discretion in denying Grant’s motion for new trial, nor did the
State’s actions constitute a Brady violation.  See Hampton, 66
S.W.3d at 612; Drew, 743 S.W.2d at 226.  Grant’s sixth issue is
overruled.

III. 
Conclusion

            Having
overruled all of Grant’s issues on appeal, we affirm the trial court’s judgments.

 

________________________

GINA
M. BENAVIDES,

Justice

 

 

Do not publish.

Tex. R. App.
P. 47.2(b).

 

Delivered and filed the

18th day of August, 2011. 

 

 

 









[1]  These two cases, in cause numbers 13-10-00421-CR (sexual assault
of a child) and 13-10-00517-CR (indecency with a child), have been consolidated into this opinion on appeal.

  





[2]  Originally arising in the Tenth
Judicial District, these cases were transferred to this Court by the Texas
Supreme Court pursuant to its docket equalization efforts.  See Tex. Gov't Code Ann. § 73.001 (West
2005).  We are unaware of any conflict between precedent of the Tenth Court of
Appeals and that of this Court on any relevant issue.  See Tex. R. App. P. 41.3.